# A. H. GARARD v. MANUFACTURERS' COAL & COKE COMPANY, Appellant.

### Division One, November 27, 1907.

1. **MASTER AND SERVANT: Coal Mine Entry: Acceptance.** The men who dug the entry-way in the coal mine had been paid therefor a month prior to the time plaintiff was employed and placed to work in one of the rooms opening upon the entry, and two or three days prior to the accident two of defendant's employees were at work in the entry propping it up and clearing it up and repairing it, and were stopped by the foreman, who was notified by them of the danger of leaving the rock which fell on plaintiff. *Held*, that whether the entry-way had been taken over by defendant, was a question for the jury.

2. ——: ——: ——: **Master's Knowledge.** And this evidence also shows that the master had knowledge of the defective condition.

3. ——: ——: ——: **Direction to Plaintiff.** Where defendant through its foreman directed plaintiff to mine in a certain room opening on to the entry, and to get his empty cars from a switch from the track in that entry, defendant had accepted, received and controlled the entry as to plaintiff, whether it had as to other miners or not.

4. ——: ——: ——: ——: **Instruction.** And the instruction for plaintiff on the subject was based on the evidence, and was well enough.

5. **PERSONAL INJURIES: "Likely to Follow."** The use of the word "likely" in the question, "State what results are likely to follow?" is not error, since in the connection in which it was used it means "reasonably expected." Besides, in this case, there was so much evidence of the character of the injury that it is apparent the use of this word did not prejudice the jury, and its use, even if otherwise of doubtful propriety, was harmless.

6. **MASTER AND SERVANT: Instruction: Measure of Master's Duty: Modified by Subsequent Clause.** The instruction told the jury "it was defendant's duty to make and keep the entry in its mine, where plaintiff would have to pass, reasonably safe from the falling of overhanging rock, earth and debris in the roof of said entry and it was not plaintiff's duty to examine said rock to see that it was. safe, but he had a right to rely up-

Garard v. Coal & Coke Co.

on the defendant to see that said entry was kept reasonably safe, and that it had exercised all reasonable care and diligence in that regard". *Held,* that, even if this part of the instruction states too broadly the measure of duty owing by the master to the servant, which is not conceded, that defect was cured by a subsequent clause therein which points out what omissions of duty would constitute a neglect to provide a reasonably safe place.

7. ———: ———: **Conflicting: No Evidence.** The instructions given for plaintiff on the subject of the master's duty to make the entry-way reasonably safe for plaintiff to pass to his place to mine, are not in conflict. Nor are they in conflict with one for defendant declaring it to be a miner's duty to place props under the roof of the room in which he mines as the mining progresses; and even if they were, there is absolutely no evidence on which to base defendant's said instruction, for he was in the entry when he was injured, and not in any of the rooms which opened out from the entry.

8. **EXCESSIVE VERDICT: $5000.** Plaintiff, twenty-four years of age, earning four dollars a day, was a miner, and injured by the falling of rock from the roof of an entry-way to a coal mine. His leg was badly broken, and as a result it is weakened and shortened, and the physicians say that the injury is permanent, and the probable result a "club-foot." *Held,* that the court would not be justified in interfering with a verdict for $5,000.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Percy Werner and Campbell & Ellison* for appellant.

(1) Defendant was not guilty of the negligence charged. The rock fell in a new entry not yet taken over by defendant. The rule as to "safe place to work" does not apply to newly excavated portions of a mine. White's "Personal Injuries in Mines," sec. 401. (2) Plaintiff in unnecessarily lingering for several minutes under the overhanging rock in the roof of the entry, when he heard it "chipping," knew that its fall was imminent, was warned by one fellow-servant and him-

self warned another, when he had ample time to get to a place of safety, and had no business where he remained, was guilty of negligence which as a matter of law bars a recovery herein. Watson v. Kansas & Texas Coal Co., 52 Mo. App. 366, citing Olsen v. McMullen, 24 Minn. 94; Walsh v. Railroad, 27 Minn. 367; Lenk v. Kansas & Texas Coal Co., 80 Mo. App. 374; Culver Const. Co. v. McCormack, 114 Ill. App. 655; Kilroy v. Foss, 161 Mass. 138; Simmons v. C. & I. R. Co., 110 Ill. 340; Bunt v. Sierra Buttes Gold Min. Co., 24 Fed. 847, affirmed, 138 U. S. 483; Knight v. Cooper, 36 W. Va. 232; Evans v. Chessmond, 38 Ill. App. 615; Fowler v. Pleasant Valley Coal Co., 16 Utah 348; Colorado Coal & T. Co. v. Carpita, 6 Colo. App. 248; "Personal Injuries in Mines," White, secs. 263 and 264. (3) The court erred in admitting in evidence the opinion of a physician to the effect that "of permanent effects the only one that could happen would be club foot, what we call talapes foot." Damages can only be recovered for injuries which are reasonably certain to ensue. 1 Joyce on Damages, sec. 244, citing: Covell v. Railroad, 82 Mo. App. 180; Chilton v. St. Joseph, 143 Mo. 192; Bigelow v. Railroad, 48 Mo. App. 367. See, also: Strohm v. Railroad, 96 N. Y. 305; Tozer v. Railroad, 105 N. Y. 617; Atkins v. Railroad, 57 Hun 102; Briggs v. Railroad, 177 N. Y. 59; Collins v. Janesville, 99 Wis. 464. (4) Plaintiff's first instruction was erroneous. The duty of a master to make a place reasonably safe is not absolute; he is only bound to exercise ordinary care to that end. Dunn v. Nicholson, 117 Mo. App. 374; Armour & Co. v. Russell, 144 Fed. 614; Orr v. Waterson, 228 Ill. 138. (5) The verdict was excessive.

*Goode & Cooley* and *Higbee & Mills* for respondent.

(1) Defendant's negligence is beyond question. The entry where the injury occurred had been driven

by men employed by defendant for that purpose and paid for and received by the company from the entryman, long before plaintiff was employed. It was and had to be used both by plaintiff and defendant, as well as other miners, as a passageway or roadway; defendant's agents had assumed jurisdiction of it, its foreman himself telling plaintiff he would see to timbering a portion on beyond where the injury occurred; actual knowledge of the dangerous condition at the place of the accident two or three days before it occurred, was brought home to defendant. Defendant's duty to maintain the entry in question, in a reasonably safe condition, and its negligence in not doing so, were abundantly shown. Plaintiff was not driving the entry, but was employed by defendant to open a room off this entry and had to use the entry as a roadway to his room. Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260; Boemer v. Lead Co., 69 Mo. App. 601; Bowerman v. Lackawana Mining Co., 98 Mo. App. 308; Smith v. Little Pittsburg Coal Co., 75 Mo. App. 177; Weston v. Mining Co., 105 Mo. App. 702; Wellston Coal Co. v. Smith, 65 O. St. 70, 55 L. R. A. 99; Tradewater Coal Co. v. Johnson (Ky.), 61 L. R. A. 161. (2) Plaintiff was not guilty of contributory negligence. The rock that fell upon him was not the one that had been heard chipping, nor was it connected with that one, being in another and different passageway. This question was properly submitted to the jury. Allen v. Railroad, 183 Mo. 426; Hamman v. Central Coal & Coke Co., 156 Mo. 243; Schroeder v. Railroad, 108 Mo. 322; Baird v. Railroad, 146 Mo. 280; Meyers v. Railroad, 99 Mo. App. 363; Buesching v. St. Louis Gas Light Co., 73 Mo. 219; Adams v. Kansas & Texas Coal Co., 85 Mo. App. 486; Bradley v. Railroad, 138 Mo. 293; Charlton v. Railroad, 200 Mo. 440; Butz v. Construction Co., 199 Mo. 287; Smith v. Little Pittsburg Coal Co., 75 Mo. App. 177; Thompson on Negligence, secs. 173, 188, 189, 138, 198,

199; Dodge v. Mfg. & Coal & Coke Co., 115 Mo. App. 501. Defendant's demurrer to the evidence at the close of the case was waived, and the question whether the case should have gone to the jury must be determined in the light of all the evidence. Fry v. Railroad, 200 Mo. 377. (3) There was no error in the admission of the evidence complained of. "Likely" is equivalent to reasonably certain. Besides, no harm could have resulted from the admission of that evidence, even if improperly admitted, and defendant not having objected till after the question was answered and no motion to strike out being made nor instruction requested withdrawing it from the jury, the objection is waived. Holden v. Railroad, 108 Mo. App. 672; O'Keefe v. Railroad, 101 S. W. 1147; Reno v. Kingsbury, 39 Mo. App. 244; Wilkinson v. Ins. Co., 54 Mo. App. 664; Young v. Hudson, 99 Mo. 106; Julian v. Calkins, 85 Mo. 206; Hogan v. Railroad, 150 Mo. 50; Grocery Co. v. Smith, 74 Mo. App. 424; State v. Marcks, 140 Mo. 669; State v. Hope, 100 Mo. 347; Hollenbeck v. Railroad, 141 Mo. 105, citing Thompson on Trials, 715, 716; State v. Young, 153 Mo. 449; Roe v. Bank of Versailles, 167 Mo. 472. (4) (a) The instructions given by the court fairly and correctly submitted the case to the jury. Read together they fairly submitted all issues, and indeed were more favorable to defendant than it was entitled to. The instructions should all be read together. Pandjiris v. Hartmann, 196 Mo. 539; Moore v. Railroad, 193 Mo. 411; Deschner v. Railroad, 200 Mo. 333; Weston v. Mining Co., 105 Mo. App. 709; Gordon v. Burris, 153 Mo. 232. (b) Instruction 1, given for plaintiff, was not erroneous. Smith v. Fordyce, 190 Mo. 12; Bradley v. Railroad, 138 Mo. 307; Knight v. Sattler Lead & Zinc Co., 91 Mo. App. 574; Orr Nash v. Kansas City Hydraulic Pressed Brick Co., 109 Mo. App. 600; Schmitz v. Railroad, 119 Mo. 279; Houts v. Railroad, 108 Mo. App. 692; O'Mellia v. Railroad, 115

Mo. 217; Gardner v. Railroad, 135 N. W. 96. (c) Plaintiff's instruction 2 is a correct declaration of the law. Schmitz v. Railroad, 119 Mo. 269; Holden v. Railroad, 108 Mo. App. 665; Sidekum v. Railroad, 93 Mo. 406; Reynolds v. Railroad, 189 Mo. 408; Mitchell v. Railroad, 97 Mo. App. 417; Everly v. Railroad, 96 Mo. App. 371; Chaplin v. Railroad, 114 Mo. App. 256; O'Keefe v. Railroad, 101 S. W. 1144. (d) No complaint can be made as to instruction 3. It follows the testimony, and is proper, even on the testimony of defendant's witness, and much more on that of plaintiff's. (5) The verdict is not excessive. It is not such as to shock the conscience, but is fair and reasonable, and having met the approval of the trial court, will not be interfered with by the appellate court. And appellant in its abstract does not set out the testimony of the physicians on this point, and is not in position to ask this court to review this question. Henderson v. Kansas City, 177 Mo. 492; O'Connell v. Railroad, 106 Mo. 482; Devoy v. Railroad, 192 Mo. 197; Phippin v. Railroad, 196 Mo. 321; Nichols v. Plate Glass Co., 126 Mo. 55, a case similar to this; Perrette v. Kansas City, 126 Mo. 238.

GRAVES, J.—Action for personal injuries occurring about the 23rd day of September, 1903. Plaintiff is a coal miner and on that date had an experience in the business of about five years. Defendant is a Missouri corporation engaged in mining coal. Some three days prior to the injury, plaintiff was employed by the defendant to mine coal in its mine in Adair county. From the evidence it appears that the main entries in this mine run north and south from the shaft. From this north main entry there had been driven at least two entries running towards the east. David Shaw was defendant's mine foreman and put the defendant to work. At the same time he also employed and put to

work one Scrivens. These parties were placed to work on the second east entry off from the north entrance. From this second east entry rooms were being "turned" or driven and worked to the north. When plaintiff was employed and placed to work, there had been three or four of these rooms "turned" or driven north, and either a fourth or fifth started. Some of the witnesses say that there were three rooms being worked and some say four. They all agree that one Hamilton was working in the last opened room to the east and that the plaintiff was placed to work in the room being opened just east of Hamilton, and that Scrivens was working in the room being opened just east of the plaintiff. The petition is exceedingly lengthy and verbose, but the negligence charged therein . is thus stated:

"Plaintiff further states that defendant, wholly unmindful of its duties, had carelessly and negligently failed to trim the roof of said entry in which plaintiff was working as aforesaid, so as to work out loose boulders and rock therein, and failed to remove such loose boulders and rock, and carelessly and negligently left unsupported the walls and roof of said entry where plaintiff was working and passing to and from his work, and the roof over and above said entry, tramway and car tracks, thereby leaving the same in a defective and unsafe condition, and by reason thereof the same were not reasonably safe, and said entry, tramway, and car track were not reasonably safe for the passage of plaintiff, in going to and from his said place of work, and in the performance of his duties as aforesaid, and defendant carelessly and negligently failed to support the walls and roof of said entry with timber and props, or other suitable materials of sufficient quantity and strength, as to prevent the same from falling and caving in on the plaintiff while at work and while engaged in the

performance of his duties, and to prevent rock, coal, earth and boulders from falling upon him, and carelessly and negligently failed to adopt any means to render said walls and roof reasonably safe, but on the contrary, allowed said walls and roof to become and remain in a dangerous and defective condition, by reason of rock and boulders and earth and coal therein becoming loosened and remaining loosened and liable to fall; by reason of all which said careless and negligent acts and conduct of defendant, the defendant's said mine and said entry and the walls and roof thereof, and said tramway and said car track, were not reasonably safe, but were dangerous and defective; and that said dangerous and defective condition of said mine and said entry and the walls and roof thereof, and of said tramway and car track, as hereinbefore set forth, was then and there known by defendant, or could have been known by the defendant, by the exercise of ordinary care and prudence on its part, in time to have fixed and repaired the same, so that the said walls and roof, and said entry, and said tramway and car track, would have been reasonably safe; and when plaintiff was engaged in the discharge and performance of his duties as the employee of defendant, under his aforesaid contract, and was in line of his duty and at a point at which it was the duty of defendant to keep and maintain said walls and roof, entry, tramway, and car track, and its said mine in a reasonably safe condition for the protection of plaintiff while coming and going to his said place of work, and while he was in the performance of his duties as aforesaid, and without fault or negligence on his part, the wall and roof of said entry, which was above and over said tramway and car track, suddenly and without warning to plaintiff gave way and fell and caved in, and a great rock and mass of earth and coal, constituting a part of said wall and roof, fell on the plaintiff, striking him on the body and legs, and bruised

and crushed the flesh of his right leg, foot and ankle, and broke and crushed the bones of his right leg, and bruised, broke and crushed the bones of right ankle and foot.''

By paragraph one of its answer, the defendant admits its corporate capacity and denies each and every other allegation of the petition. The second paragraph is a plea of contributory negligence, thus stated: ''And for further answer defendant says that whatever injury plaintiff sustained at the time and place stated in said petition, was occasioned by and resulted from his own fault and negligence directly contributing thereto in voluntarily placing himself or remaining in a position of danger after notice and warning thereof.''

Upon a trial, plaintiff was awarded a verdict by a jury in the sum of $5000, upon which judgment was entered. After unsuccessful motion for new trial, defendant appeals.

Both defendant and plaintiff file abstracts of the evidence. A comparison of the two with the record shows that the one filed by plaintiff was fully authorized owing to omissions and other inaccuracies in the one prepared by defendant, appellant.

Points made by defendant, together with the evidence bearing thereon, will be noted and stated in the opinion.

I.   Defendant's first contention is that its instruction in the nature of a demurrer to the evidence should have been sustained, and this for two reasons: (1) because the rock which fell upon and injured the plaintiff was ''in a new entry not yet taken over by the defendant,'' and (2) because plaintiff was himself negligent ''in unnecessarily lingering for several minutes under the overhanging rock in the roof of the entry, when he heard it 'chipping,' knew that its fall was imminent, was warned by one fellow-servant and himself warned another, when he had ample time to get to a place of

safety, and had no business where he remained, was guilty of negligence which as a matter of law bars a recovery herein.''

To properly discuss this, a statement of the facts shown becomes necessary. It was shown that plaintiff was placed to work in the room above indicated by Shaw, representing the defendant; that this east entry had been driven beyond this room and beyond the room where Scrivens was placed to work; that the entry or roadway was made by men who were employed for that purpose and who were paid differently from the regular miners; that this entry had been paid for by defendant a month or more before plaintiff was employed; that in driving or making entries or roadways in mines, the men doing the work put in temporary tracks, upon which to run the little cars in taking out the coal, as well as the debris resulting from such work; that afterwards, as the rooms were opened, there was placed in the entry or entry-way, more permanent tracks and a switch at each room; that at this time the permanent track had been completed at least as far as to the front of Hamilton's room, and a switch had been placed there; that in doing his work the plaintiff had been directed to get his empty cars for the purpose of loading his coal, at the switch in front of Hamilton's room; that to do so he had to go back and forth in this entry and use the track therein; that he also had to use it in going to and from the place of his work; that employees of the company, employed for that purpose, were at work fixing up this entry several days prior to the accident, but were directed by Shaw to quit that work and to go and clean up the air-course, as he was expecting the mine inspector; that these men had sounded the rock which fell upon plaintiff and knew that it was loose, and so told David Shaw, when he directed them to quit their work upon the entry and go to the air-course; that they then told him

of the dangerous condition of the entry, which was several days prior to the plaintiff's injury.

Now, at the time of the accident, the evidence of the plaintiff substantially shows this state of facts: plaintiff went down to the switch in front of Hamilton's room to get an empty car; Hamilton was cleaning up his roadway (the roadway leading from the entry in his, Hamilton's room); that plaintiff heard a cracking or "chipping" of a rock in the neck of Hamilton's room, and told him, Hamilton, to look out, there was danger; that not finding a car, he started back to his room, and when six or eight feet back from Hamilton's room, a rock from the roof of the entry fell and caught him; that he heard and saw no indications of danger in the entry, but did see and hear this "chipping" and cracking in the neck of Hamilton's room. Suffice it to say that plaintiff is corroborated by Ira Shott and other witnesses as to where the rock was which fell, and by Ira Shott as to what occurred at the time. Defendant's abstract gives Shott's testimony thus:

"IRA SHOTT: Was working at defendant's mine at the time of the accident in question. Was employed by David Shaw, who was mine foreman or pit boss. I was in the entry, close to plaintiff, when the rock fell. I should judge fifteen or twenty feet from him. I was with him just a while before the rock fell. I had told him I would get a car pushed in the switch and he could get it. After I moved from the position up by the mouth of Mr. Hamilton's room, I noticed the prop being loose there and told him to watch out, the rock was loose—the rock over Hamilton's roadway. It was in the room neck. Garard was standing out on the main track, upon the entry track, right in front of the door, I judge five or six feet out from the neck. The rock I mention was one over Mr. Hamilton's roadway, and I knew nothing of the rock being loose that struck Mr. Garard. I did not have any reference to the rock that

hit Mr. Garard. If Mr. Garard had stayed where he was when I cautioned him about that roof in Hamilton's neighter rock would have touched him. I told him I would get a prop and put in there. I left him and went 100 feet past looking for a prop and found none. When I got back he had moved his position. He had moved towards his room. When I saw him I addressed Mr. Hamilton to watch—the roof would fall. As soon as I spoke I think he started to turn around. The rock struck him on the shoulder. He had moved six or eight feet east from where he was standing. I saw the rock strike him on the shoulder. I was about fifteen feet from him. I assisted in getting him out, with the other men.''

Further corroborating plaintiff as to the fact of his having spoken to Hamilton about the rock in his (Hamilton's) room, upon examining the transcript we find these questions and answers in the testimony of Shott, which hardly fully appears in the abstract of it.

''Q. Directly after you mentioned about the roof what else was said? [This question referred to the roof in the neck of Hamilton's room.] A. I told him directly that I would get a prop and put in there. I left him and went a hundred feet past looking for a prop and found none—when I got back he had moved his position.

''Q. Where was he going? A. He had moved toward his room.

''Q. How was he going? A. When I saw him he addressed Mr. Hamilton to watch, the roof would fall.

''Q. What rock did he refer to? A. The one in Hamilton's room.''

(a) The learned counsel for defendant contends that this was a new entry and had not been taken over by the defendant and for that reason it was not liable for the injury occasioned by the fall of a rock therein. This contention is not sustained by the evi-

dence. The men who dug the entry had been paid therefor a month prior to plaintiff's employment. Two men in the employ of defendant, and who testify in the case against the contention of defendant, were at work in this identical entry and at the identical place of injury, propping up and fixing the same. They were there just a few days, two or three, prior to the date of injury. They were not engaged in mining but engaged by defendant to clean up and repair the mine. They were stopped by Shaw, the foreman, and over their protest, sent to another portion of the mine, after they had notified Shaw of the danger there was in leaving this identical rock in its then condition. Under the facts this entry was under the control of the defendant at the time. It had been paid for and received and defendant's men in the actual possession thereof.

But aside from that, it stands undisputed in the record that defendant, through Shaw, directed plaintiff to occupy the room he was in and to get his empty cars at the Hamilton switch. Whether defendant had accepted, received and controlled this entry as to others, it certainly had as to plaintiff. It was the only means he had of going to his room therefrom. In other words, it was the place furnished him in which to work. That defendant was required to furnish a reasonably safe place is unquestioned law. That it was not reasonably safe is unquestioned fact, and that defendant had knowledge of its condition, and plaintiff did not, is abundantly shown. Under such circumstances the question of defendant's negligence was properly submitted to the jury, and its demurrer to the testimony properly overruled.

(b) The next reason assigned is that plaintiff was guilty of negligence such as would preclude a recovery, because he lingered near Hamilton's room several minutes after he heard the "chipping" of a rock. This contention like the other has no foundation in

fact. The position of defendant is that plaintiff heard the rock that struck him and then remained there several minutes. The contention is based upon a false assumption of the facts. Both plaintiff and Shott saw nothing wrong with the rock in the entry, which was several feet to the east of Hamilton's room, but it was the rock in Hamilton's room which they heard, and each notified Hamilton. This question was therefore properly submitted to the jury and the demurrer properly overruled on this point.

Upon the whole the ruling of the court *nisi* on the instruction was pre-eminently correct, and we perhaps should add that the great mass of the testimony was against the defendant upon both of its contentions with reference to this peremptory instruction.

II. Dr. F. P. Young, witness for the plaintiff, had testified substantially as follows:

"He had a multiple fracture, that is, it seems the point of both bones, the fibula or outer bone, was broken where he had been, and it was broken below, and there was what you call a comminution, that is, the bones were both fragmented. Little fragments broken off. At that time he had an open sore that would discharge pus; I think that was about a month or six weeks after he was hurt as well as I remember. This is an exceptionally bad fracture, about the worst kind he could have in this place. I do not know of any worse, it is an exceptionally bad fracture. The subsequent inflammation as a result of the injury involved all the muscles and tendons popularly called leaders. That is what caused the stiffness. He is very fortunate to have the result he has.

"Q. What do you say as to whether or not the injury is likely to be permanent?

"By Mr. Campbell: What injury?

"By Mr. Cooley: I mean the effects of it; whether it is what you would understand as permanent?

"A. Oh, yes, it is a permanent injury. Anybody can see that that looks at it. That will continue. Probably it may be worse. That is one probability only. It may be it will get worse; it won't get better. It is probably as well now as it will ever be. There is bad apposition of the bones and that causes an extra amount of what is called callous material that welds the bones together. There is an extra amount of course involved and the surrounding bones and tendons, as I could put it, contract, get worse, ankylosis and a worse deformity is the result. I might say that in a case like this I amputated one foot to relieve the deformity. I say so it may be in twenty years from now you could tell ——."

After he had thus testified, and just after the last answer quoted above, then the following testimony was given by the witness, which is urged here as error:

"Q. State what results are likely to follow?

"By Mr. WERNER: I object.

"By MR. COOLEY: Q. What in your opinion? A. The worst to my opinion would be club-foot.

"By Mr. WERNER: I object to what results are likely to happen.

"By the COURT: I think he is entitled to give an opinion as an expert as to the permanent effect.

"By Mr. WERNER: Not to what is simply likely.

"By the COURT: I think you are wrong. Motion overruled.

"Defendant excepts and saves exceptions.

"A. Of permanent effects the only one that could happen would be club-foot, what we call talapes foot. That could be the only from these causes."

The objection urged is to the use of the word "likely" in the question, "State what results are likely to follow?" It is no doubt the rule in this State and elsewhere that, upon the admeasurement of present damages for the future consequences of an injury,

such damages should be such as are reasonably certain to result from the injury. The question has been up several times in instructions given as to measure of damages. Usually it has come up in instructions using such clauses as, "may hereafter suffer, if any, in consequence of such injuries." We have held that the giving of such an instruction was not reversible error. [Reynolds v. Railroad, 189 Mo. l. c. 421; Dean v. Railroad, 199 Mo. l. c. 395; Caplin v. Railroad, 114 Mo. App. 256; O'Keefe v. Railroad, 124 Mo. App. 613.]

In the Reynolds case, decided by this court, the use of the word was held proper in the light of the facts of the case and not as a general principle. Usually the use of the word "may" in such instructions has been condemned, and we think correctly so.

In the Dean case, supra, LAMM, J., held the instruction not reversible error "under the circumstances in judgment and with the restrictive limitations of the context."

The term "likely" we find discussed in but one Missouri case, Holden v. Railroad, 108 Mo. App. 665. In that case, BLAND, P. J., reviews the authorities from State and Federal courts, and approved the instruction. He closes his review of the law with this comment: "Among other definitions of the term 'likely,' given by some of the lexicographers, are the following: 'Worthy of belief.' [Webster's Dictionary.] 'Reasonably expected.' [Standard Dictionary.] 'As may be reasonably supposed.' [Century Dictionary.] Of course the term has other significations less definite than the foregoing, and for this reason it should not be used in an instruction to a jury when plainness and definiteness of direction are required, but we do not think the jury understood by the instruction that they were commissioned to estimate the damages irrespective of

what they might believe from the evidence would reas-
onably result in the future from the consequences of
the injury, but did understand   that   the future los-
ses for which they might assess present damages were
such losses as were reasonably certain to accrue from
the injury.  It was in this sense the learned trial court
understood the term as used in the instruction, and
there is nothing in the record to induce us to believe
that the jury had a different understanding.  We think
a fair construction of the term, as used in the instruc-
tion, means, and was understood by the jury to mean,
such losses as were reasonably certain to accrue in the
future as the result of the injury complained of.''

As said by Judge BLAND, one of the definitions of
the word ''likely'' is ''reasonably expected,'' and
there is but a slight shade of difference between ''reas-
onably expected'' and ''reasonably certain.''  Should
we substitute the words ''reasonably expected'' for
the word ''likely'' in this question, we think it would
meet the requirements of the law, which says that fu-
ture damages and results must be such as are reason-
ably certain to follow.  The objection is not well taken.

But if it were, there is so much other evidence in
this record on the character of this injury, that it does
not appear that this little scrap of testimony could have
prejudiced the jury, and it was therefore harmless.

III.  The first instruction given for the plaintiff
is vigorously assailed by defendant.  This instruction
reads:

''1.  If the jury find from the evidence plaintiff
was in defendant's employ mining coal on or about
September, 1903, you are instructed it was defendant's
duty to make and keep the entry in its mine, where
plaintiff would have to pass, reasonably safe from the
falling of overhanging rock, earth and debris in the
roof of said entry, and it was not plaintiff's duty to
examine said roof to see that it was safe, but he had a

right to rely upon the defendant to see that said entry was kept reasonably safe, and that it had exercised all reasonable care and diligence in that regard.

"If, therefore, you believe from the evidence the defendant or its agent in charge of said mine, knew, or by the exercise of reasonable diligence would have known, that the roof of an entry in its mine where plaintiff would have to pass was unsafe from overhanging rock, earth or debris, and negligently failed to remove such earth, rock or debris, or to make same reasonably secure, and plaintiff, while in discharge of his duties, and in the exercise of reasonable care and caution on his part, was injured and had his leg and ankle bruised, crushed and broken by the fall of overhanging rock, earth and debris in the roof of such entry, then your verdict should be for the plaintiff in such sum as you may believe from the evidence will fully compensate him for all the pain and injuries he has sustained or will sustain in the future, if any, caused by the falling of such roof upon him, not to exceed $15,000."

The contention is that this instruction states too broadly the measure of duty owing by the defendant to the plaintiff. In other words, defendant says that this instruction makes it the absolute duty of defendant to furnish plaintiff a reasonably safe entry, whereas the law only requires the defendant to use ordinary care to keep the entry way in a reasonably safe condition. The criticism is directed to the first paragraph of the instruction. This court upheld a verdict in a case where a very similar instruction was given. [Smith v. Fordyce, 190 Mo. l. c. 12.] The first part of the instruction in the Smith case, supra, was fully as strong as the instruction now in question. But aside from this, when the whole instruction is read together, we think the law was properly declared. The broad statement

of general principles is modified by the second paragraph of the instruction.

In the case of Bradley v. Railroad, 138 Mo. l. c. 308, where there was under consideration a very similar instruction, upon this point, that is, as to the modification of the broad general statement in the first part of the instruction by a second and subsequent clause, where the application of the law is made to the facts, we said: "It seems to us that this part of the instruction explains, qualifies and renders harmless what precedes it. It points out what omissions of duty on the part of defendant will constitute a neglect to provide a safe place for plaintiff to work in the circumstances in this case."

So, in this instruction. The broad statement of duty contained in the first paragraph is modified by the explanatory language of the second paragraph. The instruction will not be condemned for the reason urged first by defendant.

Defendant further contends that this instruction is in conflict with instruction three given for the plaintiff. Instruction numbered 3 reads:

"3. If the jury find from the evidence the entry or roadway had been opened for some sixty or seventy feet beyond the last room, or the room in which Hamilton was mining, and had been paid for and 'received' from the entry-man by defendant, before plaintiff was employed to open a room off said entry beyond Hamilton's room, and that plaintiff was so employed by defendant, then you are instructed it was the duty of defendant to use reasonable diligence to make and keep said entry in a reasonably safe condition where plaintiff would have to pass."

Taking both paragraphs of instruction numbered 1 and giving it the modified meaning which paragraph two places upon paragraph one thereof, there can be no

conflict between these two instructions.    They both
announce the same law.

It is then urged that plaintiff's instruction num-
bered 1 is in conflict with defendant's instruction num-
bered 2.    Defendant's said instruction reads:

"2.    The court instructs the jury that there is no
obligation on the part of the operator of a coal company
as an entry therein is being driven, to remove all loose
rock and earth, and coal and other substances from the
walls and roof of the entry, and to place props and tim-
ber therein to support the walls and roof, as the open-
ing up of said entry proceeds; but the protection of
the miners who do the work of opening up such entries,
devolves on the miners themselves as the work pro-
ceeds, and the matter of securing such entries, and
keeping them free from obstructions, only devolves
upon the operator when such entries are received by
the operator from the miners, and made into road-
ways."

We hardly see where the conflict is between these
two instructions, but if there was such a conflict, there is
absolutely no evidence in this record upon which to
base defendant's instruction number 2.    All the evi-
dence shows that this entry-way where plaintiff was
hurt had been made and paid for by defendant a month
before plaintiff was employed.    The entry-way had
been driven away beyond the plaintiff's place of work,
and we find no evidence abstracted and before us that
the defendant was, at the time, even working upon the
eastern end of the entry.    It was under the undisputed
evidence being used as an entry and working rooms
being "turned" or opened up on the north side thereof.

There are some other objections which we do not
deem necessary to mention.    Suffice it to say that in
our judgment they are without merit.

IV.    Objections are made to plaintiff's instruction
three.    We have set out the instruction in our para-

graph three. We have given a pretty full detail of the facts in our statement. To our mind the instruction is predicated upon the evidence and is not subject to this and the other criticisms made thereon by counsel for defendant. Nor is there any merit in the criticism up- on other instructions given for the plaintiff. Counsel criticise in detail but utterly fail to cite any authority in support of same. We think the instructions given were as favorable to defendant as it was entitled to un- der the facts.

V. Lastly it is urged that the verdict is excessive. We have set out a part of the testimony of one of the physicians who testified as to this injury, in connection with another point hereinabove discussed. This testi- mony we took from respondent's abstract, after com- paring it with the transcript. Appellant has failed to abstract all the testimony as to the character of the injuries, and we might have been justified in the con- clusion that it had evidently abandoned the point. Un- der the medical testimony the plaintiff sustained a very serious fracture, which has resulted in loss of motion, as well as the weakening and shortening of the limb. The physicians say his injury is permanent and the probable result is a club-foot. He was a young man, twenty-four years of age, and was earning four dollars per day. We are not prepared to say that this verdict is excessive or at least so excessive as to authorize in- terference therewith by this court.

This disposes of all the contentions of defendant.

By thus disposing of the case upon its merits which we have done for reasons appearing to us in this pro- ceeding, we in effect overrule the plaintiff's motion to affirm for failure to file in this court a proper abstract of the record. For this reason we desire to add that we in nowise intend by this action, called for by the peculiar situation of this case, to modify the views, as to our rules and the law, as announced in the recent

cases of Harding v. Bedoll, 202 Mo. 625; Stark v. Zehnder, 204 Mo. 442; Pennowfsky v. Coerver, 205 Mo. 135; and other similar cases. These cases properly declare our views and the law as we understand it, as to what should be in an abstract of the record.

From what has been said, it follows that the judgment should be affirmed, and it is so ordered.

All concur.