# DELIA OVERBY, Respondent, v. MEARS MINING COMPANY, Appellant.

### Springfield Court of Appeals, May 2, 1910.

1. **PLEADING: Negligence: Allegation That Condition Was "Likely" to Cause Injury.** An allegation in the petition that a certain existing condition of a mining shaft was "likely" to cause an injury is not objectionable, especially after verdict, when no attack had been made on the petition by demurrer or motion to make more definite and certain.

2. **MINES AND MINING: Master and Servant: Negligence: Condition of Mining Shaft.** Plaintiff's husband, an employee in a mine, while being hoisted to the surface in a tub was struck on the hip by a projecting girder in the shaft and fell to the bottom and was killed. The evidence was held sufficient to take the case to the jury on defendant's negligence in permitting the lacing boards around the shaft to become loose and in having some of them removed, and in thus exposing the employees riding in the tub to the danger of being caught on the girders as the tub would swing from side to side.

3. ———: ———: **Injury in Mining Shaft: Contributory Negligence.** An employee in a mine, while being hauled to the surface in a tub, was struck on the hip by a projecting girder in the shaft and fell to the bottom and was killed. The questions of decedent's contributory negligence in standing on the rim of the tub, instead of in the bottom, and in also holding to the rope with only one hand while attempting to guide the tub with the other hand in which he held a torch, are considered and decided adversely to defendant's contention.

4. ———: ———: ———: ———: **Threatening Danger.** Plaintiff's decedent, while in the employ of a mining company, was struck gy a projecting girder in the shaft while being drawn to the top in a tub, and fell to the bottom of the shaft and died from his injuries. The girders were exposed because several of the lacing boards had been removed. The evidence is examined and *held* not to show that deceased was familiar with the condition of the shaft and *held*, further, that his knowledge of the shaft would not, as a matter of law, defeat a recovery if the shaft was not so dangerous as to threaten immediate injury, or if he might have reasonably supposed that he could safely ascend the shaft by the use of care and caution.

5. ———: ———: **Master's Duty as to Mining Shaft: Instruction.**
Under the common law, a mining company is required to exercise ordinary care to maintain a reasonably safe means and shaft for hoisting and lowering its employees. An instruction covering this proposition is approved. To hold the company for failure in this particular, it is not necessary to declare on the statute.

6. **EVIDENCE: Negligence: Subsequent Repairs.** Where the defendant offers testimony to show that a mining shaft in which plaintiff's decedent was injured and killed had been used continuously thereafter, and no subsequent accident had happened, it was proper to permit the plaintiff to show that after the accident the alleged dangerous obstruction in the shaft had been removed.

7. ———: **Contributory Negligence: Evidence in Rebuttal.** Plaintiff's decedent, while employed as a miner by defendant, was injured and killed in a mining shaft while being hauled up in a tub. Defendant contended that deceased was guilty of contributory negligence in carrying a torch in one hand, so that he only had one hand to hold on with. *Held,* that it was competent in rebuttal to show that deceased had been ordered to carry the torch, notwithstanding no allegation to this effect had appeared in the petition.

8. ———: ———: **Mines and Mining: Custom.** In a case where plaintiff's decedent was injured in a mining shaft while being hauled up the shaft in a tub, it was held competent to rebut the charge of contributory negligence by showing that it was customary and proper for the miners in coming out of the mines to stand on the rim of the tub.

9. **INSTRUCTIONS: Mines and Mining: Master and Servant: Assumption of Risk: Threatening Danger.** An instruction which told the jury that even though decedent knew of the defective and dangerous condition of a mining shaft from which he was being hoisted, yet unless the danger was obvious and imminent and such as to threaten immediate injury, this would not preclude a recovery; *held,* not erroneous when read in connection with another instruction covering the question of assumption of risk on the part of the decedent.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,*
Judge.

AFFIRMED.

*Edgar P. Mann* and *Edward J. White* for appellant.

(1)   The petition did not allege a cause of action, in that it only charged a condition "likely" to cause an injury, and wholly failed to allege facts sufficient to constitute a cause of action for either common law or statutory negligence. Beasley v. Transfer Co., 148 Mo. 421; Plefka v. Knapp, 145 Mo. 318.   (2)   The petition alleging that the defendant required the  decedent and his co-employees to stand in the tub or can in being hoisted from the mine and the undisputed evidence showing that the decedent was standing on the rim of the tub, holding the cable with only one hand and a torch in his right hand, when he fell from the tub, and that it would have been safer to hold the cable with both hands and have one foot down in the tub, as the defendant required him to ride, he was guilty of such negligence as to prevent a recovery, in thus knowingly selecting the more dangerous way of performing his duty in the face of the defendant's rules. Schaub v. Railroad, 106 Mo. 92; Renfro v. Chicago R. Co., 86 Mo. 302; Wetzen v. Lead Co., 5 Mo. App. 598; Moore v. Railroad Co., 146 Mo. 572; Illinois Steel Co. v. McNulty, 105 Ill. App. 594; Upthegrove v. Coal Co., 96 N. W. (Wis.) 385.   (3)   The defect in the shaft, caused by the lacing being off, was a patent, obvious defect and the danger therefrom was just as apparent to the decedent as to any one else, and the decedent assumed the risk, as matter of law, in the use of the shaft, as it was.   Ft. Worth Iron Wks. v. Stokes, 76 S. W. 231; Griffiths v. Gidlow, 3 H. & N. 648; Senior v. Ward, 1 El. and El. 385, 10 Mor. Min. Rep. 646; Beach, Con. Neg., 371, sec. 140.   (4)   It was prejudicial and reversible error to permit the plaintiff's witness to state what, in his opinion, was a safe or customary manner of riding tubs out of the ground. Schermer v. McMahon, 108 Mo. App. 36; Madden v. Railroad, 50 Mo. App. 666; Boettger v. Iron Co., 136 Mo. 531; Allen v. Transit Co., 183 Mo. 413; Koenig v. Railway, 173 Mo. 698; Nash v.

Dowling, 93 Mo. App. 156. (5) Evidence of subsequent repairs has always been held to be reversible error in this State. Alcorn v. Railroad, 108 Mo. 81; Mahaney v. Railroad, 108 Mo. 191; Bowles v. Kansas City, 51 Mo. App. 416.

*John T. Sturgis* for respondent.

(1) Instead of being a fatal defect to the petition, the use of the word "likely" in charging that because of the defective condition of the shaft the tub was likely to, and did, swing under and get caught, etc., is proper and is not stating what is "merely within the range of possibility." Watson v. Coal Co., 52 Mo. App. 372. (2) In many cases evidence of customary methods and conduct is held admissible on the question of contributory negligence and as tending to show the exercise of due care. 29 Cyc. 517; 21 Ency. Law (2 Ed.), 524; 29 Ency. Law (2 Ed.), 418; Knorpp v. Wagner, 195 Mo. 659; Spencer v. Branner, 126 Mo. App. 94; Brunke v. Tel Co., 115 Mo. App. 39; O'Mellia v. Railroad, 115 Mo. 220; Chicago & Co. Ry. v. Carpenter, 56 Fed. 451; Flanders v. Railway, 53 N. W. (Minn.) 544; Whitsett v. Railroad, 25 N. W. (Ia.) 104; Mo. Pac. R. Co. v. Hally, 30 Kas. 474; Bohn v. Railroad, 106 Mo. 434; Brady v. Railroad, 206 Mo. 531; Huhn v. Railroad, 92 Mo. 444; Tibby v. Railroad, 82 Mo. 299. (3) The evidence in this case does not show that the danger was a glaring one, and the case was therefore properly submitted to the jury. Booth v. Air Line, 76 Mo. App. 519; Rogers v. Rundell, 128 Mo. App. 15; Lee v. Railroad, 112 Mo. App. 401; Dean v. Woodenware Co., 106 Mo. App. 167; 20 A. and E. Ency. Law (2 Ed.), 122; Watson v. Coal Co., 52 Mo. App. 372. (4) The doctrine that the servant does not assume the dangers arising from the negligence of the master is abundantly sustained. Curtis v. McNair, 173 Mo. 370; Briscoe v. Railroad, 130 Mo. App. 513; Brady v. Railroad, 206 Mo.

528; Cothron v. Packing Co., 98 Mo. App. 348; Cole v. Transit Co., 108 Mo. 94. (5) Instruction No. 3 given for plaintiff, and which appellant says was erroneously copied, is from an instruction approved in Helfenstein v. Medart, 136 Mo. 607; and in Houts v. Transit Co., 108 Mo. 692; Beard v. Car Co., 63 Mo. App. 389; Swadley v. Railroad, 118 Mo. 278; O'Mellia v. Railroad, 115 Mo. 218; Mahaney v. Railroad, 108 Mo. 200; Soeder v. Railroad, 100 Mo. 673; Dekan v. Mercantile Co., 197 Mo. 267; Thorpe v. Railroad, 89 Mo. 662; Reeder v. Lime Co., 129 Mo. App. 107. (6) The question of contributory negligence arising from riding out of the shaft by standing on the rim of the tub or car was properly one for the jury and was submitted on defendant's own instruction. Coin v. Lounge Co., 222 Mo. 506; Brady v. Railroad, 206 Mo. 531; Edington v. Railroad, 204 Mo. 68; Dumpley v. Stock Yards Co., 118 Mo. App. 519; Murphy v. Railroad, 115 Mo. 125; Butz v. Construction Co., 137 Mo. App. 225; Briscoe v. Railroad, 130 Mo. App. 522; Gibler v. Railroad, 129 Mo. App. 93.

GRAY, J.—This is an appeal from a judgment of $6000, in favor of the plaintiff for the death of her husband, who was killed by falling from a tub while he was being hoisted from the appellant's mine in Newton county, Missouri, on July 29, 1907.

The appellant, at the time complained of, was a corporation engaged in mining for lead and zinc in Newton county, and the plaintiff's husband was in its employ. The appellant had two shafts at its mining plant, known as the Mascot shaft and the Homestake shaft. Plaintiff's husband's usual employment was underneath the ground at the Mascot shaft. On the evening of July 29, 1907, he descended the Mascot shaft for the purpose of working therein for the appellant. There was some change made and the Mascot shaft was not operated that night, and the deceased was directed to work at the Homestake shaft. The two shafts

had been connected by an underground drift so that the deceased passed from the Mascot shaft through this drift to the Homestake shaft, and assumed his duties. The Homestake shaft was about two hundred and fourteen feet deep, and except for the distance of about forty feet from the surface, extended through solid rock. The first forty feet of the shaft had been cribbed. This is done by lining the shaft with lumber or timber laid horizontally, and is for the purpose of holding loose rock or dirt which might otherwise fall to the bottom of the shaft and injure the employees, and also for the purpose of keeping the shaft in proper condition. From the foot of the cribbing to the top of the drift near the bottom of the shaft, the shaft had been laced, and this is done by placing girders around the sides of the shaft at a distance of about ten feet apart and by nailing boards perpendicularly to these girders, thereby making a smooth inside surface of the shaft, so as to leave no obstruction for the tub or can to hang on while coming from the bottom of the shaft to the surface.

In the Homestake shaft, the boards used in lacing were about twenty feet long, and a foot wide. Sometime previous to the accident, some of the boards in the first and second tiers from the bottom of the shaft, had become loose and fallen off, and some had been removed by the foreman of the defendant.

The evidence was conflicting as to whether the deceased was acquainted with the true situation as to the boards being removed. He had performed but little labor at the Homestake shaft, and the testimony does not show that he had worked at that shaft previous to the night when he was killed, while the shaft was in the condition it was that night. The night shift ended at two a. m. At that time the men assembled, as was the custom, at the bottom of the shaft, to be hoisted to the surface. In hoisting men and ore from the bottom of the shaft, the company used a hoister, cable and cans or tubs. The hoister was on the surface, and to it the

cable was attached like a rope on an ordinary windlass. On the other end of the cable, the tubs were attached by means of a hook, so that as one tub was sent into the shaft, · it could be unhooked and another attached thereto.

The evidence shows that it was the custom of the men in going out of the mine, to stand on the rim of the can, and to take hold of the cable with their hands. There were about thirteen men in the employ of the defendant in the ground at the Homestake shaft on the night the plaintiff's husband was killed, and part of them got on the tub and went out when their shift's work had ended. The tub was let down to the bottom of the shaft again, and the deceased and two other employees got on the tub as others had, and started out. After they had been hoisted a short distance, the tub began to swing, and finally the hip of the deceased was caught under one of the girders from which the boards had been taken, and as he pushed away, the shoulder of another one of the employees on the tub with him, caught underneath another girder and caused the tub to ·tip so that deceased lost his balance and fell from the tub to the bottom of the shaft, and received the injuries from which he died within a short time.

The petition alleges "that the defendant negligently permitted the lacing boards to become loose, torn off and removed, and that on account thereof, and while the plaintiff and two other workmen were ascending the shaft in the usual manner, and while they were in the tub or can exercising due care, and by reason of the negligence of the defendant in the manner above indicated, the can in which they were riding, swung to one side and caught under the loose and exposed timbers, and thereby causing the deceased to fall with great violence to the bottom of the shaft."

The answer was a general denial, and a plea of contributory negligence and assumed risk.

144 App—24

The plaintiff's husband carried with him, while coming out of the shaft, a lighted torch, which held about a quart of oil. This torch, he held in one hand, and he held to the cable with the other hand. Plaintiff's testimony tends to prove that it was the custom of the employees in the capacity plaintiff's husband was working, to carry such a torch in coming out of the mine; that the same was required by the superintendent, and it was also useful in lighting the way.

The appellant at the close of the plaintiff's case, and at the close of the whole case, presented demurrers to the evidence, which were refused by the court, and the point has been preserved and is presented in this court.

It stands practically undisputed that the death of plaintiff's husband was caused by failure of appellant to keep the lacing boards mailed to the girders, as they originally had been. The shaft was only about four feet in diameter, and with a can nearly three feet in diameter, there was not much space left between the edge of the can and the side of the shaft. In cutting the shaft through the solid rock, it was more than likely that the sides of the shaft were not smooth so that the company deemed it advisable to put in the lacing boards. When these lacing boards were removed, as the testimony shows they were, it left the girders to which they were nailed, standing out as obstruction in the shaft, and to which the cans were likely to become caught, and the men riding out of the shaft were likely to be thrown under or against these girders, and thereby endanger their lives.

The appellant's foreman was a witness in its behalf, and upon this point, gave the following testimony:

"Q. Then if it (tub) swings just comparatively little, a man's hip might strike on one of these exposed girders there, might it not? A. Well, it could do such a thing.

"Q. Liable to, isn't it? A. Yes, sir.

"Q. You know that a shaft is not nearly as safe as if those boards were on there, on account of those things? A. Well, that would help it a whole lot, I suppose.

"Q. That is, if the boards were on there, the fact that it jostled against the side would not hurt anybody, would it? A. No."

We think there was abundant testimony to submit the case to the jury.

The petition charges that as a result of the defendant's negligence, the tub or can in which the deceased was raised from the bottom of the shaft, was "likely" to swing under the projecting and exposed timbers. The defendant insists that the petition does not state a cause of action, because it is charged that the condition was "likely" to cause an injury. On the authority of Garard v. Coal & Coke Co., 207 Mo. 242, 105 S. W. 767, we rule this point against the appellant. It may be added, however, that no objection was made to the petition, either by demurrer or motion to make more definite and certain.

The petition states that the plaintiff's husband was riding in the tub or can, and the testimony shows he was riding on the rim of the tub, holding to the cable, as above stated. This variance is also presented by the appellant for our consideration. The uncontradicted testimony of all the witnesses shows that the miners in riding up the shaft, stand on the rim of the tub or can, instead of getting their feet down into the same, and therefore, the appellant's contention that the deceased selected the more dangerous way of performing his duty, is without force.

It is also claimed that the plaintiff's husband held on to the cable with one hand only, and it would have been safer for him to have used both hands. There is no dispute in the evidence about this proposition. The miners all agree that in going out on the tub, one

man guided the tub with his hand, and it was shown that while the plaintiff carried a lighted torch in one hand, he used that hand to guide the tub, and there is no evidence that by reason of having the torch in his hand, he was unable to properly guide the tub.

It is further insisted that the defect in the shaft caused by the lacing being off, was a patent, obvious defect, and the danger therefrom was just as apparent to the deceased as to anyone else, and therefore, he assumed the risk as a matter of law.

In the first place, the testimony does not show that the plaintiff's husband was acquainted with the true situation regarding the lacing boards. From the bottom of the shaft, the evidence shows, he could see that some of the boards were missing, but the testimony does not show that he could tell the number that were gone, and especially in the second tier from the bottom. The deceased's knowledge of the condition of the shaft would not, as a matter of law, defeat a recovery if it was not so dangerous as to threaten immediate injury, or if he might have really supposed that he could safely ascend the shaft by the use of care and caution. [Mahaney v. The Railroad, 108 Mo. 191, 18 S. W. 895; Houts v. The Transit Co., 108 Mo. App. 686, 84 S. W. 161; Lee v. The Railroad, 112 Mo. App. 372, 87 S. W. 12; Maude Strickland v. Woolworth & Co., unreported, but decided by this court at the present term.]

The court permitted some witnesses to give their opinions as to what was a safe or customary manner of riding tubs out of the ground at appellant's mine, and appellant assigns that action as error. When this proof was first offered, the evidence went in without objection, but when the plaintiff attempted to prove that such was the custom in other mines, an objection was made and sustained by the court. And later, the court advised the attorneys that it would on suggestion strike out all of the testimony relating to the safest way of

riding on the can in coming out of the shaft, and later the court did withdraw that evidence from the jury.

We are asked to review the action of the court in permitting a witness for the plaintiff to testify that after the death of plaintiff's husband, the shaft had been repaired by nailing new boards on the places where the lacing had been torn off. The appellant is in no position to complain of that action, as during the trial and previous to the time this question arose, the appellant had inquired of witnesses if the shaft had not been used continuously after the death of plaintiff's husband, and that it remained in the same condition, and no accident had happened. The testimony complained of was brought out in rebuttal of that fact. The appellant having offered testimony to show that no subsequent accident had happened, the respondent had the right to show that the alleged dangerous obstruction had been removed.

Appellant complains of the action of the court in permitting plaintiff's witnesses to testify that the deceased had been ordered to bring the steel torch out of the ground with him, because such fact was not alleged in the petition. This testimony was brought out in rebuttal of testimony offered by the appellant to prove contributory negligence.

Complaint is made of the action of the court in permitting witnesses to prove that the shaft was not cribbed when the petition contained no such allegation. We would not notice this point, but appellant has presented it with earnestness and cited authorities to support his contention. The testimony was not offered to prove the negligence of the appellant. One witness testified on cross examination that shafts were laced in order to prevent dirt and rocks from falling from the sides of the shaft to the bottom. The respondent's testimony as to the cribbing was offered only for the purpose of showing that cribbing was put in the shaft for such

purposes and that lacing was used for the purpose here-tofore stated.

It was next insisted that it was prejudicial to permit plaintiff to prove by witnesses that it was the custom of the miners to ride on the rim of the tub in coming out of the mines.  The testimony not only went to the the purpose of showing that it was the ordinary way, but that it was the proper way, and it was offered to meet the defendant's contention that the deceased was guilty of contributory negligence in so doing.  The authorities hold that when such testimony is offered for the purpose of rebutting a charge of contributory negligence, it is proper to admit it. [21 Cyc. 517; 21 Ency. Law (2 Ed.), 524; Knorpp v. Wagner, 195 Mo. l. c. 659, 93 S. W. 961.

As the appellant makes several objections to each one of the instructions given in behalf of plaintiff, it will be necessary to take them up in their order.

By the first instruction, the court told the jury that under the law, persons and corporations operating mines, are required to provide and maintain reasonably safe means and shafts for hoisting and lowering persons working therein, from and to their place of work, and if the jury found the deceased was in the employ of the defendant and was killed while in the exercise of ordinary care on his part, by being thrown from the tub or can while he was being hoisted from the defendant's mine, and if the jury further found that the lacing boards on the side of the shaft were off, leaving the ends of the boards and girders exposed, and that by reason thereof the shaft was not reasonably safe for the deceased and other employees to be hoisted through the same, and that such defective and unsafe condition was known to defendant, or might have been known by the exercise of ordinary care, and that the tub or can in which Overby was being raised was likely to, and did, while he was in the exercise of ordinary care, swing under the exposed ends of the lacing board or girders, or in the

hole made in the shaft by the lacing boards being removed, and thereby caused Overby to be thrown from the can to the bottom of the shaft and killed, the jury were authorized to find a verdict for the plaintiff.

The appellant objects to the first part of the instruction, and asserts that it is an abstract proposition of law, and it seeks to hold the appellant to the requirements of section 8811, Revised Statutes 1899, and that statute was not declared on.

We fail to see any merit in this contention. In telling the jury that the law required the appellant to provide and maintain a reasonably safe means and shaft for hoisting and lowering its employees the court was simply declaring the duty of the employer at common law.

The second objection to this instruction is put in the following language: "In referring to the shaft as being unsafe and dangerous and to the 'tub' or 'can' as swinging under the unsafe place in said shaft, the instruction is likewise erroneous."

The instruction is not subject to the criticism leveled against it, as the instruction does not assume, but required the jury to find that the shaft was in an unsafe and defective condition.

The appellant complains of the second instruction, and says that it limited the deceased's assumption of the risk from using a known obvious defective shaft, unless he also knew the danger arising from such obvious defective place, and appellant asserts as decedent was known to be a skilled miner, and there was no evidence that he did not fully appreciate the dangers arising from the well-known obvious condition surrounding him, the instruction was erroneous.

The instruction complained of first told the jury that the plaintiff in accepting the employment assumed all the usual and ordinary risks and danger incident to his employment, but that he did not assume risks or danger arising or resulting from the negligence

of the master in failing to use reasonable care to have and keep its mining shaft in a reasonably safe condition, unless such defect and unsafe condition of the shaft, if it was defective and unsafe, and the danger arising therefrom, was known or might have been known to the deceased by using ordinary care; and although the jury might find that the appellant's shaft was defective and dangerous, yet if they further found that its dangerous condition was known and understood by deceased, and without complaint or objection he continued to use the shaft until he was injured, plaintiff could not recover.

This instruction is more favorable to the appellant than the authorities justify. In the first place, the testimony does not show that the deceased was fully acquainted with the defective condition of the shaft. There was some testimony to the effect that he was, but there was some testimony upon which the jury might have found to the contrary, and the instruction properly submitted the issue to the jury.

Appellant insists that the third instruction is wrong, because therein the court told the jury that even though the decedent knew of the defective and dangerous condition of the shaft, yet unless the danger was obvious and imminent and such as to threaten immediate injury, would not preclude a recovery, and appellant says that this instruction is squarely held to be reversible error by the Supreme Court in Minnier v. The Railroad Co., 167 Mo. 115.

The instruction follows instruction No. 2, wherein the court plainly told the jury that the plaintiff assumed all the risks and dangers incident to his employment, and directly refers to that instruction, and says: "You are further instructed in this connection." As the third instruction refers to the second one, it must be read specially in connection therewith, and by so doing, it will be found that it is not in conflict with Minnier v. The Railroad, as contended by the appellant, but is in perfect harmony therewith.

It is next claimed that instruction No. 4, defining negligence and ordinary care, is erroneous, as declared in Buesching v. Gas Light Co., 6 Mo. App. 92; Cohn v. Kansas City, 108 Mo. 392, 18 S. W. 973. The instruction is not in the form of the instructions in those cases, and contains the elements which the courts say would have made the instructions in those cases good, and is a copy of instructions given in McMahon v. Express Co., 132 Mo. 641, 34 S. W. 478; Sweeney v. The Cable Co., 150 Mo. 385, 51 S. W. 682; Buckner v. Horse & Mule Co., 221 Mo. 1. c. 708, 120 S. W. 766.

The appellant says the instruction on the measure of the damages is erroneous because it authorizes the assessment of damages on the earning capacity of the deceased, rather than what he contributed to the plaintiff. The instruction is not subject to the criticism but properly told the jury in estimating her damages, the jury could take into consideration what he was earning.

The court gave nine instructions in behalf of the appellant, and which clearly presented in a light favorable indeed, the law in its behalf. The appellant asked, and the court refused an instruction to the effect that if the jury believed from the evidence that the injury and death of plaintiff's husband would not have occurred but for the negligent manner in which the tub was being hoisted, then the verdict should be for the defendant. It is sufficient to say that there was not a word of testimony upon which to base this instruction. All the evidence shows that the hoisterman was carefully performing his duty, and that nothing was done by the men out of the ordinary.

The appellant also asked, and the court refused, an instruction telling the jury that if they found the accident would not have happened but for the swinging of the tub, then plaintiff is not entitled to recover. All the evidence shows that it was expected that the tub would swing more or less in coming out of the shaft, and that it was customary for the men to steady the tub by

putting their hands against the lacing from time to time. It was further shown that the very purpose of lacing was because it was known that the tub would swing against the sides of the shaft, and as the lacing when kept in proper condition, formed a level surface on the sides of the shaft, no harm was done by the tub coming in contact therewith.

The last instruction asked by appellant and refused by the court, submitted the question to the jury of the negligence of the deceased and his co-employees on the tub. The court had submitted that question in another instruction given in behalf of defendant, and in addition thereto, it may well be said there is no evidence in the case upon which to submit the question.

The judgment in this case is for six thousand dollars, and we have taken up each point urged by the appellant for a reversal, and have carefully considered the same, and after doing so, we are unable to find any substantial error in the record.

Mining is a dangerous business, and laboring men engaged in that occupation, assume all the risks incident thereto. The employer must know that the occupation is a dangerous one, and that it is rendered more dangerous by his failure to exercise ordinary care to protect the lives and limbs of his men.

It stands admitted in this case that the shaft wherein the plaintiff's husband met his death, was laced because it was thought proper to do so, in order that in hoisting men and tubs therefrom, the surface of the sides of the shaft would be smooth, and free from obstructions which might cause the tub to catch and dump its contents on the men below, or throw the servants to the bottom of the shaft while riding on it. After the lacing had been put in and nailed to the girders, as shown in the testimony, the requirement that the boards be kept in place was of more importance than that they should have been put on at the beginning. When the boards were renewed, the girders to which they were

nailed stood out as projections or obstructions in the shaft, and as the shaft was only four feet in diameter, it was a narrow shoot indeed, through which the men passed from the bottom of the shaft to the surface.

With all of this knowledge, it is shown in the testimony that the defendant not only permitted some of the lacing boards to become loose, but intentionally removed some of them, and thereby left the shaft in a more dangerous condition than it probably would have been in had it never been laced.

The husband of the plaintiff was in the ground at two o'clock, and there was no other way for him to be hoisted to the surface than through this shaft. When he went into the mine at night to perform his duties, he went down another shaft, and the evidence does not show that he then knew he would be hoisted from the Homestake shaft. When he was through with his shift, he started out of the shaft in the ordinary and usual way, and so far as the testimony shows, exercising all the care required or expected of him under the circumstances. The tub started to swing, as was expected, and the men in trying to steady it, got under the projections in the shaft made by the intentional act of the defendant, and he was killed thereby.

Under these circumstances, the issues were fairly for the jury, and as we have failed to find any error was committed in the taking of testimony or in the instructions given by the court, it is not our right to interfere, and therefore, we will affirm the judgment. All concur.