# WILLIAM H. PENDEGRASS, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 31, 1913.

1. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** Where there is evidence on both sides of a disputed issue of fact, the question is for the jury.

2. **MASTER AND SERVANT: Injury to Servant: Breaking of Ladder: Question for Jury.** In an action for injuries sustained by a servant by the breaking of a ladder which he was descending in the performance of his work, *held*, under the evidence, that the question of whether it was a part of his duties to see that the ladder was kept in a reasonably safe condition, as being part of the appliances placed in his charge, was for the jury.

3. ———: ———: ———: **Assumption of Risk.** Where a ladder was a part of the premises upon and about which a servant was required to work and was the only method provided for ingress to and egress from a pit into which it was necessary for the servant to go, and the servant, prior to the time he was injured by reason of the ladder breaking while he was descending it, had been employed at the place only six days, *held*, under the evidence, that it cannot be said that he knew the condition of the premises or that he assumed the risk of any danger that might lurk therein which was not so obvious as to deter a man of ordinary prudence from using the same; it being the master's duty to exercise ordinary care to furnish him with a reasonably safe place in which to work, including reasonably safe means of access to the pit.

4. ———: ———: ———: ———: **Simple Appliance.** A ladder, which was the only method provided for ingress to and egress from a pit into which it was necesary for a servant to go, was not a "common tool" but a fixed portion of the premises upon which and about which the servant was required to work, and hence the "simple appliance doctrine" was not applicable in an action by the servant for injuries sustained by reason of the ladder breaking while he was descending it.

5. ———: **Appliances and Place of Work: Duty of Master to Inspect.** The master does not discharge his duty by furnishing his servant with a proper place in which and proper appliances with which to work, but it is his duty to inspect and make such

examinations and tests, at reasonable intervals, as are reasonably necessary to ascertain the condition of the place and appliances.

6. ———: Injury to Servant: Defective Ladder: Question for Jury. In an action for injuries sustained by a servant by the breaking of a ladder which he was descending in the performance of his work, *held*, under the evidence, that the jury might reasonably infer that the rung which broke had become insecurely fastened owing to its continued use through a long period of time, and that reasonably careful and frequent inspection thereof would have revealed the defect; *held*, *further*, that the evidence warranted an inference that the ladder as constructed was not a reasonably safe appliance for the use to which it was put; and hence it is *held* that whether the master was liable, was a question for the jury.

7. ———: ———: ———: Instructions. In an action for injuries sustained by a servant by the breaking of a ladder which he was descending in the performance of his work, the court instructed, at the instance of plaintiff, that it was defendant's duty to furnish appliances that were reasonably safe, and that if defendant neglected such duty and there was a defective rung on the ladder and defendant knew thereof, or by ordinary care could have known of it, and by reason thereof the rung broke and caused plaintiff to fall while he was exercising ordinary care, he was entitled to recover. *Held*, that although the first part of the instruction charged that it was defendant's duty to furnish appliances that were reasonably safe and secure, the instruction is not to be condemned as imposing the liability of an insurer on defendant, in view of the fact that a subsequent part of the instruction required the jury to find that defendant either knew of the unsafe or insufficient condition of the appliance, or by the exercise of ordinary care could have known of the same. *Held*, *further*, that if the instruction, standing alone, could be said to be erroneous, it was cured by instructions given at defendant's request, ·requiring the jury to find that the ladder was in an unsafe and dangerous condition, and that defendant knew or by ordinary care could have known thereof, to warrant a recovery by plaintiff, and charging that if the defect in the rung was hidden and could not have been known to defendant by ordinary care, plaintiff could not recover, and that defendant was not an insurer against danger in the use of the ladder nor required to furnish plaintiff with the safest or most modern ladder to be used by him, but was only required to furnish plaintiff a ladder that was reasonably safe for the purposes intended.

8. ———: Furnishing Appliances: Duty of Master. The master is not an insurer of the absolute safety of appliances fur-

nished the servant or of the place furnished him to work, the master's duty being simply to exercise ordinary care to that end.

9. **INSTRUCTIONS: Construction: Entire Charge Considered.** In determining whether an instruction is erroneous, it must be construed in connection with the other instructions given, and an ambiguous or general term in one instruction may be explained by another instruction, and a partial view may also be thus supplemented, provided the whole be consistent and harmonious.

10. **DAMAGES: Personal Injuries: Instructions.** In an action for personal injuries, an instruction that if the jury found for plaintiff, they should assess his damages at such an amount as would be a fair compensation for the injuries, if any, received by him, and that in estimating the amount, the jury might consider the character of plaintiff's injuries, whether they were permanent, the bodily pain suffered, if any, by reason of the injuries received, and any bodily pain plaintiff would likely suffer in the future, the reasonable value of time lost, if any, etc., was not vulnerable to the objection that it failed to limit the future bodily pain for which plaintiff was permitted to recover to such as would be the direct result of the injuries sustained.

11. ———: ———: ———. In an action for personal injuries, an instruction that if the jury found for plaintiff, they should assess damages in his favor for "any bodily pain and anguish he will likely suffer in the future, if any," was not erroneous because of the use of the word "likely."

12. ———: ———: **Impairment of Earning Capacity in Future: Pleading.** In an action for personal injuries, the petition alleged that plaintiff's limbs were partially paralyzed and that by reason thereof plaintiff had suffered and would continue to suffer great mental anguish and bodily pain, had been unable to do any business or follow his usual avocation whereby he formerly earned a living for himself and family, and had been all the time since his injury and still was unable to do or perform any manual labor, and was totally and permanently disabled. On objection by defendant that the petition did not plead loss of earnings in the future as an element of damage and that it was therefore improper to permit an award of damages therefor, *held* that it has never been the practice, in actions for personal injuries, to aver special damages will accrue in the future from impairment of earning capacity (following Scholl v. Grayson, 147 Mo. App. 1. c. 664); *held, further*, that, in any event, the allegation that plaintiff had been unable to follow his usual avocation, coupled with the allegation that the cause which produced that result

was permanent, was sufficient to permit a recovery for this element of damage (following Ingles v. Railroad, 145 Mo. App. 1. c. 247).

13. ——: ——: **Excessiveness of Verdict.**   Plaintiff fell to the bottom of the pit of a pump house, causing a permanent injury to the lower part of his spine.   He was confined to his bed forty-four days, and after this went about on crutches for a time.   Physicians testified that he had a chronic disease of the nerve substance of the spinal cord, that it was progressive and permanent, and that he would not be able to do any manual labor.   He had previously earned from $45 to $55 per month.   *Held,* that a verdict awarding him $6000 was not excessive.

Appeal from Cape Girardeau Circuit Court.—*Hon. C. B. Faris,* Judge.

AFFIRMED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1)   The demurrer to the evidence should have been sustained, because:   (a) Plaintiff had full charge of the pump house and all appliances, including the ladder, and it was his duty to see that it was kept in a reasonably safe condition.   He was a vice principal. Forbes v. Dunnavant, 198 Mo. 208; Knorpp v. Wagner, 195 Mo. 662; Herbert v. Ferry Co., 107 Mo. App. 297; Steffenson v. The Roehr Co., 136 Mo. App. 228; Bowen v. Railroad, 95 Mo. 277; Miller v. Railroad, 109 Mo. 356; Tel. Co. v. Jeffries, 154 S. W. 1114; Williams v. Ransom, 234 Mo. 71; Henson v. Stave Co., 151 Mo. App. 243; Modlagl v. Foundry Co., 248 Mo. 587, 154 S. W. 752.   (b) Plaintiff had used the ladder thirty or thirty-five times without accident.   It was a simple appliance; he knew its condition, better even than his master, and he must be held to have assumed the risk. Steinhauser v. Spraul, 127 Mo. 541; Blundell v. Mfg. Co., 189 Mo. 560; Marsh v. Chickering, 101 N. Y. 396; Cahill v. Hilton, 106 N. Y. 518; Sheridan v. Gorham

Mfg. Co., 13 L. R. A. (N. S.) 687. (c) Even if there was a defect in the ladder, such defect was a latent one, which could not have been discovered by the exercise of ordinary care on the part of the master, and there can be no recovery. Lee v. Railroad, 112 Mo. App. 396. But the ladder was a "common tool," to which the rule of ordinary care on the part of the master does not apply. Vanderpool v. Partridge, 13 L. R. A. (N. S.) 668; Dickenson v. Jenkins, 144 Mo. App. 136. The duty of inspection by the master of appliances used by servants does not extend to small and common tools in every day use. Wachsmuth v. Electric Co., 118 Mich. 275. (d) The ladder was peculiarly within the knowledge of plaintiff, and exclusively under his control. He therefore cannot be aided by the rule of *res ipsa loquitur*. Klebe v. Distilling Co., 207 Mo. 486; Railway v. Andrews, 96 S. W. 183. (2) The first instruction given for plaintiff is erroneous, since it placed upon defendant the absolute duty to furnish plaintiff a reasonably safe appliance; whereas the law only requires that the defendant use ordinary care to furnish a reasonably safe appliance. The master is not an insurer of the absolute safety of either the servant or the appliance. Henson v. Stave Co., 151 Mo. App. 244; Bowen v. Railroad, 95 Mo. 268; Blanton v. Dold, 109 Mo. 64; Glover v. Bolt & Nut Co., 153 Mo. 327; Minnier v. Railroad, 167 Mo. 99; Chrismer v. Tel. Co., 194 Mo. 189; Beebe v. Transit Co., 206 Mo. 419; Brown v. Land & Lbr. Co., 65 Mo. App. 162; Marshall v. Hay Press Co., 69 Mo. App. 256; Stalzer v. Packing Co., 84 Mo. App. 570; Bennett v. Lbr. Co., 116 Mo. App. 699; Chenoweth v. Sutherland, 129 Mo. App. 438. (3) The second instruction given for plaintiff is erroneous for two reasons: (a) It permitted the jury to take into consideration "any bodily pain and anguish that plaintiff will likely suffer in the future, if any;" without limiting it to such as would be the direct result of the injuries sustained. (b) It

permitted the jury to take into consideration "the reasonable value of the time lost, if any, since the injury and on account thereof; the extent, if any, to which plaintiff will be prevented and disabled by reason of said injury from earning money in the future." The petition does not allege loss of time or earnings. Loss of earnings must be specially pleaded. Ingles v. Railroad, 145 Mo. App. 247; Edwards v. Railroad, 79 Mo. App. 259; Slaughter v. Railroad, 116 Mo. 269; Scholl v. Grayson, 147 Mo. App. 664; Coontz v. Railroad, 115 Mo. 674; Scholl v. Grayson, 147 Mo. App. 664. Instructions must not be broader than the pleadings. Fulkerson v. Thornton, 68 Mo. 468; Melvin v. Railroad, 89 Mo. 106; Whitlock v. Appleby, 49 Mo. App. 297; Black v. Railroad, 217 Mo. 685; Kellogg v. Kirksville, 132 Mo. App. 519; State ex rel. v. Land & Lbr. Co., 161 Mo. 673. (4) The fifth instruction given on behalf of plaintiff is erroneous. Authorities cited under point I. (5) The verdict of the jury is excessive.

*Lane & Alexander* for respondent.

(1) The demurrer to the evidence offered by plaintiff was properly overruled; there is ample evidence in the record to justify the submission of this case to the jury. 4 Thompson on Negligence, sec. 3960; Thomas on Negligence, Rules, Decisions and Opinions, pp. 790, 792, 793; Thompson on Negligence, White Supplement, secs. 3949, 3950, 3952; Bailey on Personal Injuries (2 Ed.), p. 2160; 1 Bailey on Personal Injuries, p. 356; White on Personal Injuries on Railroads, sec. 152; Twombly v. Consolidated Electric Light Co., 64 L. R. A. 51; Porter v. Railroad, 60 Mo. 160; Porter v. Railroad, 71 Mo. 66; Railroad v. Harris, 107 S. W. 108; Czernicke v. Ehrlich, 212 Mo. 395; Phippin v. Railroad, 196 Mo. 339; Bible v. Railroad, 154 S. W. 883; East Tennessee Co. v. Jeffries, 154 S. W. 1112; Steinhauser v. Spraul, 114 Mo. 551; Han-

lan v. Railroad, 104 Mo. 381; Murray v. Railroad, 101 Mo. 236; Railroad v. Cox, 55 S. W. 354; Bowen v. Railroad, 95 Mo. 278; Miller v. Railroad, 109 Mo. 356, 357; Adams v. Railroad, 102 S. W. 906, 907; Green v. Banta, 48 N. Y., Super. Ct. R. 156; Green v. Banta, 97 N. Y. 627; Solarz v. Railroad, 29 N. Y. Supp. 1123. (2) According to undisputed evidence, respondent was directed to go to Crystal City to take charge of the pump at that place, and his duty was to run the pump and pump water, as shown by all the evidence. The ladder was an appliance furnished by the master, and under the law it was the master's duty to furnish reasonably safe appliances, which were fit for the purpose for which they were intended to be used. Respondent did not select the ladder or choose the material of which it was constructed. Therefore, none of the decisions cited under point I in appellant's brief are applicable to this case. It was the duty of appellant by inspection, to keep his appliances and machinery reasonably safe, and in that regard to exercise reasonable care commensurate with the nature of the business, to protect its servants from the hazards incident to it. This duty the law imposes on the master and will not allow him to cast it off. It is contrary to public policy to allow the master to relieve himself by contract from liability from his own negligence. The servant never assumes the risk of the master's negligence. Phippin v. Railroad, 196 Mo. 347; Bible v. Railroad, 154 S. W. 883; Lee v. Railroad, 112 Mo. App. 391; Porter v. Railroad, 71 Mo. 77; Czernicke v. Ehrlich, 212 Mo. 395; Railroad v. Beasley, 155 S. W. 187. (3) Appellant specially complains of plaintiff's instructions Nos. 1, 2 and 5. There were five instructions given for the plaintiff, and eleven instructions for the defendant. We submit that, as a whole, the instructions fairly cover the law and the evidence, and that there are no vital defects in the plaintiff's instructions; on the other hand, appellant's instructions cover

every phase of the case and every defense urged by it. Porter v. Railroad, 71 Mo. 66; Porter v. Railroad, 60 Mo. 160; Bible v. Railroad, 154 S. W. 883; Lee v. Railroad, 112 Mo. App. 391; Czernicke v. Ehrlich, 212 Mo. 394; Phippin v. Railroad, 196 Mo. 347; Texas Co. v. Strange, 132 S. W. 372. (4) (a) Plaintiff's instruction No. 2 is on the question of the measure of damages, and which we think, under all the decisions in this State, is well enough. We content ourselves with citing a few cases which we think are directly on the point and that discuss this precise question. Bible v. Railroad, 169 Mo. App. 519, 154 S. W. 883; Reynolds v. Transit Co., 189 Mo. 419, par. 4, and cases cited; Scholl v. Grayson, 147 Mo. App. 664, 665; Smith v. Railroad, 155 S. W. 56; Beasley v. Railroad, 155 S. W. 187; Dean v. Railroad, 199 Mo. 393; Devoy v. Transit Co., 192 Mo. 206; Haywood v. Kiehn, 151 S. W. 207. (b) The instruction is criticised because it is alleged that it permitted the jury to take into consideration the reasonable value of the time lost, if any, since the injury, and on account thereof; the extent, if any, to which plaintiff would be prevented and disabled by reason of said injury from earning money in the future. This precise point is thoroughly discussed and is ruled against the contention of the appellant in the case of Scholl v. Grayson, 147 Mo. App. 664. (c) Appellant is estopped now from complaining about the measure of damages submitted, for the reason that the evidence shows a permanent disability, and for the further and more potent reason that the court is not required in civil cases to instruct on every and all questions whether suggested or not; and for the further reason that there is nothing in the amount of the verdict to indicate that the jury were actuated by any improper motive in their assessment of damages. If the instructions on the measure of damages was broader than was warranted in the opinion of appellant, it was its duty to offer a correct instruction on that point

and thereby call the court's attention to the question. Geismann v. Electric Co., 173 Mo. 679, and cases cited; Hughs on Instructions, sec. 57; Railroad v. Worthy, 27 S. W. 426.

ALLEN, J.—This is an action by a servant against the master for personal injuries alleged to have been sustained while in the latter's employ. There was a verdict and judgment for plaintiff below, and the case is here upon defendant's appeal.

At the time that plaintiff received his injuries he was working for the defendant railroad company, as a "pumper," at the latter's pumping station at Crystal City, his principal duty being to operate a pump for the purpose of keeping a supply of water in defendant's water tank at said place. It appears that plaintiff, who had previously worked for the defendant, was employed on or about November 1, 1910, to go to Crystal City as a pumper and relieve the man then engaged in doing such work at that place. The evidence discloses, however, that he did not begin work until November 5, 1910. At this pumping station of defendant, the pump and boiler used for pumping water into the tank were situated in what is called a "pit." The latter, it seems, was about ten or twelve feet deep. The floor, or at least a part thereof, was of concrete, upon which stood the boiler and pump. The only means provided for ingress and egress to and from the pit consisted of a wooden "ladder," which was firmly fixed in place as a sort of stairway, to be used whenever it became necessary to descend into the pit. It appears that the sides of this ladder were pieces of pine about four inches wide by two inches thick, and that the steps, or rungs, of the ladder consisted of simple pine slats, about three inches, or possibly less, in width, and an inch or less in thickness, which were nailed to the side pieces. It appears that plaintiff's duty as a pumper were ordinarily per-

formed above ground, and not in the pit, but that it was necessary for him at times, sometimes several times a day, to descend into the pit to look after matters pertaining to the machinery located therein.

Upon the sixth day after plaintiff had been sent to this place, viz., on November 11, 1910, while descending the ladder that led into the pit, one of the slats thereof gave way, causing him to fall to the bottom of the pit, upon the pump, whereby he sustained the injuries for which he sues.

It appears that the slat which gave way was the third one from the top. The testimony respecting the appearance of the ladder and slat after the accident (neither of which was in evidence) tended to show that the slat had been supported, at the end thereof which gave way, by two nails; and that it had been pulled or forced from about the lower nail, and had split out from the upper nail, the split extending diagonally along the slat, perhaps half way of its length, and coming out at the upper edge thereof.

The evidence was to the effect that this crack or split was a fresh one. It seems that this ladder had been in the pit for at least four or five years; how much, if any, longer does not appear; and there was testimony to the effect that it was so covered with dirt and grease that one could not discover much concerning its character or condition by merely looking at it in that condition. It appears that it was rather dark in the pit, and that there was frequently water in the bottom thereof.

On behalf of defendant one witness, Mr. Brooke, defendant's general foreman of the bridge and building department, which included the water service, testified that one could stand on one slat or rung of the ladder and take his foot and kick off another slat; and he gave it as his opinion that the plaintiff kicked off the slat in question and fell purposely, in order to bring a lawsuit against the company.

A Mr. Prior was foreman of the water service department, under the bridge and building department. It was he who employed the plaintiff. He testified that any light repairs which a pumper could make himself, the latter was expected to look after; and that anything in the nature of "heavy repairs" the pumper was supposed to report to the witness, who in turn would report it to his superior, Mr. Brooke; and that in case a new ladder were necessary, it would have to be so reported to him and by him to his superior. He testified that, upon employing plaintiff on this occasion, he told him "to put everything in good shape" at the pumping station; but he stated that what he meant by this was that the man who had previously had charge at this place "had been a little careless, oil spilled over the floor, the boiler was dirty and I wanted him to— had reference to the condition of the pump and engine."

On behalf of defendant there was testimony to the effect that it was the duty of the pumper at any station to make repairs of the nature here in question. However, it appears that plaintiff heretofore, in performing the duties of pumper, had not been located at a station where such a ladder was used. Defendant's foreman who employed him testified that he said nothing to plaintiff about the ladder. And plaintiff on his part testified that he had been previously told by the foreman, his immediate superior, that the latter had nothing to do with the woodworking department, "that the pump and boiler was what he was supposed to look after;" and that the woodworkmen were supposed to do the woodwork on all the buildings and structures; and that plaintiff had not been instructed to make inspection or repairs of such things, and that he had never done so previously while working for defendant. He stated that the foreman on this occasion told him to go and take charge of this station, for the time being, saying: "We are going to cut that place out, you go

up and stay until we get the glass people in fix so they can furnish us water; I will move you to a better place.''

It appears that no inspection was made of the ladder during the time that plaintiff worked there; and the only evidence of any inspection at all is to be found in the testimony of Mr. Brooke, the general foreman of the bridge and building department, who testified that about the latter part of September or early October of that year, he was in the pit with a torch; that he was always examining for defects, etc., and that he looked at the ladder and saw nothing wrong with it.

Defendant's pump repairer, whose duties pertained to repairing the pumps and pumping stations, testified that he had never been given any instructions to make repairs on this ladder or to examine it to see whether it needed repairs.

I.  Appellant earnestly contends that the trial court erred in overruling the demurrer to the evidence interposed by it, and insists that plaintiff failed to make out a case entitling him to go to the jury.  Appellant's contention in this regard is based, for one thing, upon the theory that plaintiff had full charge of the pump house and all appliances therewith connected, including the ladder, and that it was his duty to see that it was kept in a reasonably safe condition. As to this, however, it is sufficient to say that the evidence was not uncontroverted on this score.  It is true that there was testimony on behalf of defendant tending to show that defendant expected a pumper, as a part of his duties, to look after the making of repairs of this character, in order to see that such things were kept in a reasonably safe condition.  But, on the other hand, it appears that plaintiff had never before worked at a station which required the use of a ladder as this did; and it was not shown that he was informed that he was required to look after such things.  His testi-

mony tends to show that such was not included within his duties; and certain it is that there was no testimony that he was specifically instructed with respect thereto. Defendant's foreman, under whose immediate supervision plaintiff came, said that he told plaintiff to "put everything in good shape;" but he explained that this had reference to the condition of the pump and engine.

It being a controverted question of fact whether or not plaintiff, as defendant's employee, was charged with the duty, not only of attending to the pump, but of keeping the premises and appurtenances thereabout in repair and in reasonably safe condition, the trial court quite properly referred this question to the jury by an instruction. As defendant's theory in this regard was not conclusively established by the testimony, for that reason alone the court could not have properly sustained its demurrer to the evidence upon that ground.

Further contention is, that defendant had used the ladder quite a number of times during the period in question; that it was a simple appliance, and that he knew its condition even better than the master and must be held to have assumed the risk therefrom. This contention is without merit, however, for the reason that the ladder was a part of the premises upon and about which plaintiff was required to work. It was the only method provided for ingress and egress to and from the pit into which it was necessary for him to go from time to time. He had been employed at this place but six days, and it cannot be said that he knew the condition of the premises, or that he assumed the risks of any dangers that might lurk therein, which were not so obvious as to deter a man of ordinary prudence from using the same. It was the master's duty to exercise ordinary care to furnish him a reasonably safe place to work, which included a reasonably safe means of access to the machinery in the pit.

179 App. 34

And the ladder was not a "common tool," or in fact in this case a tool at all, in the proper sense of that term, but a fixed portion of the premises upon and about which the plaintiff was required to work. And whatever may be said as to the rule regarding the duty of the master to inspect appliances in the nature of common tools of every day use, such rule would clearly have no application here.

But it is said that the defect in the ladder, if any, was a latent one which could not have been discovered by the exercise of ordinary care on the part of the master, and that therefore there can be no recovery. But we think that there was sufficient evidence to take to the jury the question of whether the master had properly discharged its duty toward the servant to exercise reasonable care to provide the latter with a reasonably safe place to work. It appears that this ladder had been in use for a number of years. Defendant's foreman of the bridge and building department testified that it was there when he took charge of these departments nearly four years before the accident. The pump repairer thought that it had been there as long as he had had anything to do with this station, which was four or five years. No witness could say when it had been installed. There was no evidence of any repairs ever having been made upon it, nor was there any evidence that it had ever been inspected in a way which would have revealed any defects or insufficiencies therein.

It is true that defendant's foreman of the bridge and building department testified that, a month or more before the accident, he was in the pit and examined the ladder and the premises generally, as was his custom; but it quite clearly appears that this examination was a very superficial one. There was testimony to the effect that the ladder was so covered with dirt and grease that one looking at it by the light of a torch, as did this witness, could see but little, if any-

thing, more than the fact that it remained intact. This witness merely said that while he was in the pit he "looked at the ladder;" and said: "I am always looking for defects; I examined the ladder when I was there and went up and down it; I had a torch."

This was the only evidence relating to any inspection of the ladder at any time prior to the accident. The duty resting upon the master in such cases to inspect and make such examinations and tests, at reasonable intervals, as may be reasonably necessary to ascertain the condition of the place or instrumentality in question is an affirmative and continuing duty. "It will not do to say that having furnished suitable and proper machinery and appliances, the master can thereafter remain passive, so long as they work well and seem safe. The duty of inspection is affirmative and must be continually fulfilled and positively performed. Anything short of this would not be ordinary care." [Ogan v. Railroad, 142 Mo. App. l. c. 252, 126 S. W. 191, quoting approvingly from Houston v. Brush, 66 Vt. 331, 29 Atl. 380.]

And relative to the performance of the master's duty to inspect, our Supreme Court in Gutridge v. Railway, 105 Mo. 520, 16 S. W. 943, said: "We quote these authorities to show that the master is not always, and under all circumstances, excused if he could not *see* a defect. And if the conditions are such as would excite suspicion in a man of ordinary prudence, he must go further and apply other tests. . . . What the ordinary tests, as applied to railroad appliances, are, is not disclosed by this record; but we feel satisfied that *looking* is not the only test. The master must use such reasonable tests to discover defects as ordinary prudence suggests."

And in Labatt on Master & Servant it is said: "In view of the natural tendency of an inorganic instrumentality to become less and less safe the longer it is used, a court will not set aside a verdict for the servant

which is based upon the theory that the failure to inspect it was culpable, where the evidence shows that it had been a part of the master's plan for such a period that, taking into account the nature of the materials of which it was composed, the functions it was performing, and the various influences to which it was exposed by climatic changes or physical forces, it is not an unreasonable inference that a prudent man would have examined it for the purpose of ascertaining what its actual condition was.'' [3 Labatt on Master & Servant (2 Ed.), sec. 1061, p. 2808.]

Further authorities might be cited, but the foregoing are sufficient to indicate the rule applicable to such a situation, with respect to the master's duty to inspect. In the instant case it was not shown that the slat in question contained a concealed defect, such as an old crack, or a worm-eaten or decayed place; but there is evidence tending to show that the lower of the two nails which supported it at one end pulled through the slat, causing the latter to split off at the other nail from the strain thus placed upon it; the split extending diagonally along the slat and ending at the upper edge thereof. The jury might reasonably infer from this that the slat, for one thing, had become insecurely fastened in place, owing to its continued use through a long period of time and the deterioration naturally incident thereto, and perhaps increased by the dampness to which it was exposed in the pit; and that reasonably careful and frequent inspections thereof would have revealed the same.

There is some evidence from which the inference may also be drawn that the ladder, as a fixed and permanent means of access to the pit, was, as originally furnished, not reasonably safe for such permanent and continued use. It seems that it was a mere pine ladder, the slats thereof not being notched into the side pieces, but merely laid upon the latter and fastened by nails. And one of defendant's witnesses volunteered

the statement that one could stand on one slat or rung thereof and with his foot kick off another one. This would indicate that the ladder was not a very stable structure for use as a permanent stairway, so to speak, furnishing a means of access to the bottom of the pit. However, we are primarily concerned with its condition at the time that it was furnished to this plaintiff. It was defendant's duty to furnish plaintiff at said time a reasonably safe means of access to the machinery situated at the bottom of the pit. And if the ladder furnished was not reasonably safe for such purpose, and the defendant could have discovered it by exercising ordinary care to that end, then defendant became liable to its servant for injuries sustained by reason thereof, if such servant was in the exercise of ordinary care in using the same. [See Cabannee v. St. Louis Car Co., 178 Mo. App. 718, and authorities cited.]

We think that the evidence adduced, together with the inferences which may be fairly drawn therefrom, were sufficient to make it a question for the jury, whether the defendant had breached its duty to exercise ordinary care to furnish plaintiff with a reasonably safe place to work; and that the court could not properly have declared, as a matter of law, that the defendant had fully discharged its whole duty in this respect.

The theory that plaintiff purposely kicked off one of these slats and fell, in order to bring suit against the defendant, is not pressed here. The opinion of one of defendant's witnesses below with respect to this question was, of course, without probative force. But we need not discuss the matter, for if there can be said to have been any evidence tending to show that plaintiff fell purposely, the question was here one entirely for the consideration of the jury.

We think that the learned trial judge committed no error in overruling defendant's demurrer to the evidence and sending the case to the jury.

II.  At the request of plaintiff the court gave five instructions; and eleven were given at defendant's request.  Error is assigned with respect to the giving of the instructions for plaintiff.

Plaintiff's first instruction, in substance, told the jury that it was defendant's duty to furnish appliances, "such as a ladder for means of ingress and egress to and from said pump, *that were reasonably safe,* secure and sufficient for the transaction of its business," and that if the jury should find that defendant neglected its duty in this behalf, etc., and that there was a defective or insufficient crosspiece or rung upon the ladder, *and that defendant knew thereof "or by the exercise of ordinary care and prudence could have known of the same,"* and that by reason thereof such crosspiece or rung of the ladder broke and gave way   and thereby caused plaintiff to fall, and that plaintiff exercised ordinary care for his own safety, then the verdict should be for plaintiff.

This instruction is assailed upon the ground that it places upon defendant the absolute duty to furnish plaintiff a reasonably safe appliance or place to work; whereas, the law requires only that defendant use *ordinary care* to furnish a reasonably safe appliance or place to work.

It is, of course, quite true, as appellant asserts, that the master is not an insurer of the absolute safety of the appliance furnished the servant, or of the place furnished him to work.  The master's duty is unquestionably to exercise ordinary care to such end.  However, we think that the instruction under consideration is not open to the attack made upon it.  It is true that the earlier part of the instruction tells the jury that it was defendant's duty to furnish appliances, etc., that

were reasonably safe and sufficient. Further on in the instruction, however, the jury are required to find that the defendant either knew of such unsafe or insufficient condition thereof, or by the exercise of ordinary care and prudence could have known of the same. [See Girard v. Coke & Coal Co., 207 Mo. 242, 105 S. W. 767.]

Furthermore, if there could be said to be any error in this instruction in this regard, it was fully cured by the instructions given at defendant's request. One of these required the jury to find that the ladder "was in an unsafe, defective and dangerous condition" and that "defendant knew, or by the exercise of ordinary care could have known," thereof. And another told the jury that if the "defect in the rung was hidden and could not have been known to defendant by the exercise of reasonable care" plaintiff could not recover. And still another told the jury that "defendant was not an insurer of the plaintiff against the danger in the use of the ladder, nor was the defendant required to furnish plaintiff with the safest, best and most modern ladder to be used by him in the performance of his duties, as the employee of the defendant; but the defendant was only required to furnish plaintiff with a ladder which was reasonably safe for the purposes it was intended."

It will be observed that defendant, by the instruction last mentioned, likewise had the jury told that defendant's duty was "to furnish plaintiff with a ladder that was reasonably safe," and not that it was defendant's duty to exercise reasonable care to that end. And furthermore, it is very apparent that, considering the instructions as a whole, the jury could not possibly have been misled as to the defendant's duty in the premises.

All of the instructions must be read together before condemning one for such an error as is said to inhere in plaintiff's first instruction. [See Jackson v.

Tel. Co., 156 S. W. 801, and cases cited.] ''An ambiguous or general term in one instruction may be explained by another instruction, and a partial view may also be thus supplemented, provided the whole be consistent and harmonious.'' [Gibler v. Terminal R. R. Ass'n, 203 Mo. l. c. 222, 101 S. W. 371.]

III.   Plaintiff's second instruction told the jury that if they found the issues for plaintiff, to ''assess his damages at such an amount as would, in their judgment, be a reasonable and fair compensation to plaintiff for the injuries, if any, received by him on the occasion in question;'' and that in estimating the amount thereof the jury might ''take into consideration the extent and character of said injuries so received, if any, and whether the same are permanent; the bodily pain and anguish suffered by plaintiff, if any, by reason of the injuries received, if any, and any bodily pain and anguish that plaintiff will likely suffer in the future, if any; the reasonable value of the time lost, if any, since the injury and on account thereof; the extent, if any, to which plaintiff will be prevented and disabled by reason of said injury from earning money in the future;'' the verdict not to exceed twenty-five thousand dollars.

This instruction is said to inhere with error because ''it permitted the jury to take into consideration 'any bodily pain and anguish that plaintiff will likely suffer in the future, if any;' without limiting it to such as would be the direct result of the injuries sustained.'' But there is no merit in this contention.   This clause of the instruction is immediately subjoined to and connected with the preceding clause referring to past pain suffering; and it is quite apparent that the words ''by reason of the injuries received'' were intended to be taken with both such clauses, which are included between semicolons and separated by a comma only, and which taken together constitute that portion of the in-

struction which relates to pain and suffering as an element of damages. And the use of the word "likely," under such circumstances, did not constitute reversible error. [See Garard v. Coal & Coke Co., 207 Mo. 242, 105 S. W. 767; Holden v. Railroad, 108 Mo. App. 665, 84 S. W. 133.]

IV. This instruction is further assailed upon the ground that the petition does not allege loss of time or earnings; whereas the instruction permitted the jury to take into consideration "the reasonable value of the time lost, if any, since the injury and on account thereof; the extent, if any, to which plaintiff will be prevented and disabled by reason of said injury from earning money in the future."

Respecting this question the petition, after setting forth plaintiff's injuries and averring that they caused a partial paralysis of the lower limbs, etc., alleges: "That by reason of said great hurt, wound and injuries so received, plaintiff has suffered, does now, and will continue to suffer great mental anguish and bodily pain; that by reason of said injuries, plaintiff has been unable to do any business, or follow his usual avocation whereby he formerly earned a living for himself and family and has been all the time since said injury, and is now, unable to do or perform any manual labor whatsoever, and that he is totally and permanently disabled by reason of the injuries aforesaid." From this it plainly appears that the petition at least counts upon past loss of earnings. The allegation that plaintiff had been unable to do any business or follow his usual vocation, whereby he formerly earned a living, and that since the injury he had been unable to perform any manual labor, is tantamount to an averment of loss of earnings. It is specifically averred that plaintiff, since the receiving of his injuries, had been unable to perform any labor whereby he previously earned a living, which necessarily means that he had lost the earnings

of his labor, upon which he was dependent for a livelihood.

Appellant's contention with respect to the failure to allege loss of earnings, can find support, if at all, only in so far as it relates to future loss of earnings, upon the ground that such loss is not specifically pleaded. It is true, as appellant says, that it has been held that an allegation of permanent injuries, such as we have here, is not equivalent to alleging loss of time or earnings. [See Coontz v. Railroad, 115 Mo. 669, 22 S. W. 572; Gerdes v. Christopher & Simpson, etc., Co., 124 Mo. 347, 27 S. W. 572, 615.] But in Scholl v. Grayson, 147 Mo. App. l. c. 664, 665, 127 S. W. 415, it was pointed out that "the decisions requiring a special averment in order to recover loss of earnings, had been given in cases where the loss sought to be recovered was of past earnings, and it never had been the practice in actions for personal injuries to aver specially damages would accrue from loss in the future of earning capacity." [Citing Bartley v. Trorlight, 94 Mo. App. 214, 218.]

And in Ingles v. Railroad, 145 Mo. App. l. c. 247, 129 S. W. 493, it is said: "The petition alleges: 'That by reason of said injuries he has suffered and will continue to suffer great bodily pain and mental anguish; that he has lost a great deal of time on account of said injuries, has been unable to obtain employment by reason thereof, and is permanently injured and crippled as a result of said injuries' . . . Though the petition does not expressly allege loss of earnings in the future, the allegations quoted bring the issue of such damages within the rule announced by this court in Goodloe v. Railway, 120 Mo. App. l. c. 202, where we said 'to allege that plaintiff's ability to earn money has been impaired, coupled with the statement that the cause that produced that result is permanent, is the assertion of the fact that the impairment likewise is permanent and, therefore, raises the issue of a perma-

nent deterioration in earning capacity and satisfies the rule that loss of earnings, being in the nature of special damages, must be specially pleaded.' "

Upon the authority of these cases we think that this assignment of error should be ruled against the appellant.

V. Another assignment of error pertains to the fifth instruction given for plaintiff which deals with defendant's duty as a master, and the risks assumed by plaintiff in the premises. But we need not dwell upon this, for it is clear that if there are any imperfections in this instruction they were cured by instructions given for defendant which fully covered the matters referred to in plaintiff's said instruction.

VI. The amount of the verdict, to-wit, six thousand dollars, is challenged as being excessive. In falling, plaintiff's body struck the pump, at the bottom of the pit, causing an injury to the lower part of his spine. Plaintiff testified that he was confined to his bed for a period of about forty-four days; and after that it seems that he went upon crutches up to the time of the trial below, except for a short period when he says that his condition improved somewhat. As to this, a portion of plaintiff's testimony, as contained in the record, is as follows: "When the time came that I could get out of bed, I used crutches; of course I got so I could get about tolerably well without crutches, but never been so I could straighten up, never been without pain; I can't show the jury now how I walked without crutches, I can tell them; in getting up and down, if I got down on the ground I have to use my hands to pry myself up, that is if I squat plum down; I got so I could get around pretty well, I could never lift anything that would amount to anything; of course my left leg has always been numb, I can't use it right, I have never been so that I could use it good at all; as a usual thing in trying to get around I brace myself on that thigh.

Cannot get up and walk down without my crutches. Commenced getting better in May and got along good, a right smart better up until along in July.''

Seven physicians testified at the trial, two of them for plaintiff and five for defendant, three of the latter having been appointed by the court to make a physical examination of plaintiff. The testimony of the medical experts adduced in plaintiff's behalf went to show that he was suffering from ''chronic myelitis,'' which is said to be a disease of the nerve substance of the spinal cord, and which may be produced by or result from an injury to the spine such as it appears plaintiff received; that shock or injury is the common cause thereof; and that it impaires the functions of the muscles of that part of the body which are under the control of the nerves which emanate from the section of the spinal cord involved, causing at least a partial paralysis of such portions of the body; and that in plaintiff's case the voluntary muscles of his legs were impaired so that he could not command the use of the latter.

One of these physicians stated: ''Chronic myelitis always grows worse after a while; it improves for a time; in a short while after the injury is sustained it begins to show signs of improvement, the length of time it would show evidence of improvement is indefinite; may go as long as six months or a year; always grows worse after that.'' This would account for the period of improvement in plaintiff's condition to which he testified. Both of these witnesses were of the opinion that plaintiff's condition would be permanent—that there was no probability that it would improve in the future.

Defendant's medical testimony was very much to the same effect. The three physicians appointed by the court all thought that there would be a permanent impairment of plaintiff's power of locomotion. Two of them thought that plaintiff had some disposition to

exaggerate his symptoms, but one could not say that he saw any such tendency. One of them said: "I regard his injury as a permanent one; regard it as a serious injury so far as locomotion is concerned; his power to walk is permanently impaired, but not completely." And another said: "I regard his injury as a serious and permanent injury."

It appears that plaintiff, at the time of the trial below, was thirty-six years of age, in full possession of his faculties, and a strong man physically, and that he had been earning from forty-five to fifty-five dollars per month, at what may be termed manual labor.

In view of the testimony to which we have alluded above, it is altogether clear that we would not be justified in declaring the verdict excessive. There is ample evidence to support a recovery to the amount of the verdict. And whether plaintiff was exaggerating the extent of his injuries, and was really less injured than he professed to be, as appellant seems to think, was a question to be considered and determined by the jury.

It follows that the judgment below should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.