JOSEPHINE NOWOTNY, Respondent, v. ST.
LOUIS BREWING ASSOCIATION, Appellant.

St. Louis Court of Appeals, November 3, 1914.

1. MASTER AND SERVANT: Action for Death: Explosion of
Tank: Sufficiency of Evidence. In an action for the death of
an employee, caused by the explosion of an ammonia tank, liber-
ating fumes which caused his death, evidence *held* sufficient to
support the allegations of the petition, that the tank was old,
worn, weak and defective and therefore unsafe and dangerous,
and that the exercise of ordinary care on defendant's part would
have revealed its condition.

2. ————: Safe Place to Work: Duty of Master. A tank which
was designed to be and was subjected to enormous pressure in
the course of its operation, and which contained a deadly sub-
stance, viz., ammonia, was a highly dangerous instrument, and
as such required inspection and such reasonable tests as
ordinary prudence would suggest, at reasonable intervals, in
order to determine its capacity to stand the strain to which it
was subjected.

3. ————: ————: ————. The duty resting upon a master to
inspect and to make such examinations and tests, at reasonable
intervals, as may be reasonably necessary to ascertain the con-
dition of the place where, or the instrumentality with which, a
servant is required to work, is an affirmative and continuing
duty.

4. ————: Action for Death: Explosion of Tank: Assumption of
Risk. While an employee assumed the risks ordinarily inci-
dent to the employment after the performance of the duty of
inspection enjoined by law upon the employer, he did not assume
the risk of injury from the explosion of an ammonia tank aris-
ing from the employer's negligent failure to inspect the tank,
where it was not part of the employee's duty to make such in-
spection.

5. ————: ————: ————: Contributory Negligence. In an
action for the death of an employee, caused by the explosion of
an ammonia tank, liberating fumes which caused his death,
*held* that, although a valve was opened while decedent was in
charge of the tank, and that this caused the explosion, the
question of whether decedent was guilty of contributory negli-
gence was a question for the jury, and not for the court, in
view of the fact that others had access to the valve and were

in the room in which the tank was located prior to the explosion, and in view of the further fact that, even if decedent opened the valve, there was nothing to suggest that the tank would be subjected to anything more than the pressure to which it was ordinarily subjected, and, therefore, decedent would have had the right to assume that it would be perfectly safe to open the valve.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Edw. C. Kehr* for appellant.

(1) The plaintiff's case is without evidence to support it. The peremptory instructions to find for the defendant should have been given and the refusal of them is error. The judgment should be reversed. Nagle v. Gas Light Co., 169 Mo. App. 243; Lohse v. Brewing Co., 169 Mo. App. 463; O'Malley v. Railroad, 113 Mo. 319; Glover v. K. C. Bolt & N. Co., 153 Mo. 329; Goranson v. Manufacturing Co., 186 Mo. 300; Hester v. Dold Packing Co., 84 Mo. App. 454. (2) The explosion was one of the risks assumed by the deceased when he entered the service of the defendant. Livnegood v. L. & C. Co., 179 Mo. 325; Knorpp v. Wagner, 195 Mo. 637; McGrath v. Transit Co., 197 Mo. 97; Cole v. Jones, 159 Mo. App. 472. (3) The employer discharges his duty to the employee when he furnishes him the tools or appliances which are in common or general use in the business in which he is engaged. Whatever is according to the general, usual or ordinary course adopted by those in the same business is reasonably safe within the meaning of the law; the test is general use. Coin v. Lounge Co., 222 Mo. 488; Chrismer v. Bell Telephone Co., 194 Mo. 208; Smith v. Railroad, 69 Mo. 32; Cognett v. Railroad, 69 Mo. 423; Bohn v. Railroad, 106 Mo. 429; Brands v. St. Louis Car Co., 213 Mo. 698; Mason v. Fourteen

M. Co., 82 Mo. App. 367; Kane v. Falk Co., 93 Mo. App. 209; Barnett v. Paper Mill Co., 149 Mo. App. 498; Marques v. Koch & Kost, 176 Mo. App. 152; 1 Bailey on Personal Injuries (2 Ed. 1912), par. 162-163, pages, 369, 375; Sager v. Samon Mining Co., 162 S. W. 762. (4) . The evidence and the physical facts demonstrate beyond a doubt that the deceased came to his injuries through his own fault. The defense was established beyond the possibility of cavil. I refer to the facts set forth in the statement. (5) The court gave two instructions for the defendant, which the jury ignored. Excuse for doing so may be found in the second instruction given for the plaintiff, which is a general instruction on the whole case, but is so framed as to exclude the defense. The instruction is a condensed repetition of the charges of the petition against the tank or receiver with a direction to find for the plaintiff if such are the facts, without any reference to the defenses which were affirmatively pleaded. Toncrey v. Railroad, 129 Mo. App. 600; Bolles v. Railroad, 134 Mo. App. 704.

*Charles E. Morrow* for respondent.

(1) There was ample evidence to take the case to the jury upon all the charges of negligence, and the demurrer to the evidence was properly overruled. (a) The tank was old, weak, worn and defective. Organ v. Railroad, 142 Mo. App. 248; Railroad v. Behrens, 208 Ill. 20; Railroad v. Prickett, 109 Ill. App. 468; Railroad v. Prickett, 210 Ill. 140. (b) The tank had been operated twenty-six years without being inspected or tested. Scheurer v. Rubber Co., 227 Mo. 368; Organ v. Railroad, 142 Mo. App. 248; Gutridge v. Railroad, 105 Mo. 520; Denker v. Milling Co., 135 Mo. App. 340. (c) Defendant should have provided the tank with a safety valve. Smith v. Fordyce, 190 Mo. 24; Huhn v. Railroad, 92 Mo. 448; Jones v. Rail-

road, 178 Mo. 548-549; Hyshell v. Swift & Co., 78 Mo. App. 39. (d) The defendant not having brought up the evidence *in haec verba,* is in no position to have this question reviewed in this court. Nash v. Brick Co., 109 Mo. App. 600; Meriwether v. Howe, 48 Mo. App. 148; Oglebay v. Kansas City College, 71 Mo. App. 339; Reed v. Peck, 163 Mo. 333; Davis v. Vories, 141 Mo. 234; Davies v. Boyers, 140 Mo. App. 593. (2) Instruction number 2 given for plaintiff is correct and has been approved. It did not ignore any of the issues. Organ v. Railroad, 142 Mo. App. 248. (3) It is the duty of the master to see that proper inspections and tests are made of machinery, tools and appliances with or about which his servants are required to work. Scheurer v. Rubber Co., 227 Mo. 347; Organ v. Railroad, 142 Mo. App. 248; Denker v. Milling Co., 135 Mo. App. 340; Gutridge v. Railroad, 105 Mo. 520. (4) An employee never assumes enhancement of risk and danger due to an omission of duty of the master to make proper inspections and tests, nor does he ever assume the negligence of the master. Curtis v. McNair, 173 Mo. 270; Denker v. Milling Co., 135 Mo. App. 343; George v. Railroad, 225 Mo. 408; Charlton v. Railroad, 200 Mo. 433; Strother v. Milling Co., 169 S. W. 49. (5) It was clearly the duty of the defendant to provide the tank in question with a safety valve. The appliance has been manufactured for years and was in common use in other cities, and it is so simple and practicable that it was gross negligence in the defendant to operate the tank in question under such high pressure without such an appliance. Although the safety valve in question might not have been in existence years ago when the refrigerating system was put in, yet defendant cannot shut its eyes to all improvements in machinery. It must keep pace with the developments of the time. Smith v. Fordyce, 190 Mo. 24; Huhn v. Railroad, 92 Mo. 448; Jones v. Railroad, 178 Mo. 548; Hyshell v. Swift & Co.,

78 Mo. App. 39. (6) The question of the defendant's liability for the defects of old machinery turns upon the continued exercise of due care, for its duty to its employees is only discharged when its agents whose business it is to supply such instrumentalities exercise due care as well in their purchase originally as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employees. Lehigh Valley Coal Co. v. Kizel, 80 Fed. 470; Hough v. Railroad, 100 U.. S. 213, 25 L. Ed. 612; see also Bullard v. Hitchcock Mfg. Co., 51 Hun 188; note 41, L. R. A. 79. (7) It will not do to say that having furnished proper machinery and appliances the master can thereafter remain passive so long as they work well and seem safe. Looking is not the only test. The duty of inspection is affirmative and must be continuously fulfilled and positively performed. Organ v. Railroad, 142 Mo. App. 248; Gutridge v. Railroad, 105 Mo. 520. (8) The contention of the defendant that the servant was bound to know the condition of the tank as well as the master is not the law. The master is bound to look for defects and make proper inspections and tests. The servant is only required to discover such defects as the ordinary use of the appliance would disclose to a man of ordinary prudence. Gutridge v. Railroad, 105 Mo. 520. (9) The question of making reasonable inspections and tests was submitted to the jury in instruction number 2, on behalf of plaintiff. Organ v. Railroad, 142 Mo. App. 248. (10) The failure of defendant to produce in evidence the head of the tank so that the jury could see the break in question is a strong circumstances against defendant which the jury had a right to consider. McGuire v. Joslyn, 31 N. Y. State Rep. 990; Reyburn v. Railroad, 187 Mo. 575; Clark v. Railroad, 40 Hun 605; Bleecker v. Johnston, 69 N. Y. 309; The Fred M. Lawrence, 13 Fed. 635.

ALLEN, J.—This is an action brought by plaintiff to recover damages for the death of her husband, alleged to have been caused by the negligence of defendant. There was a verdict and judgment for plaintiff, and the defendant appeals.

On and prior to January 5, 1909, defendant owned and operated a brewery in the city of St. Louis, in connection with which it operated a refrigerating system. On the day aforesaid, plaintiff's husband, Joseph Nowotny, was in the employ of the defendant, as an engineer, and, while he was engaged in the line of his employment in the engine room of defendant's brewery, an ammonia tank or receiver, located in said engine room and constituting a part of the defendant's said refrigerating system, exploded, whereby he received injuries from which he died on January 12, 1909.

The negligence charged in the petition is that the ammonia tank was "old, worn, thin, weak and defective," and was not provided with a safety valve; by reason whereof it was unsafe and dangerous for use, and which defendant knew, or by the exercise of ordinary care would have known, and by reason whereof it was caused to explode.

The answer is a general denial, together with a plea of assumption of risk, and a plea to the effect that when the deceased began work upon the evening in question and the tank was placed in his control it was closed off from the remainder of the refrigerating system, and that a relief valve upon it had been opened to empty its contents, of which he was informed, and that in such condition an explosion was impossible and any subsequent change in the condition of the tank whereby the explosion became possible was a negligent act of the deceased, "who thereby brought about or directly contributed to bring about the injuries of which the plaintiff complains."

The reply is conventional.

The evidence discloses that Nowotny went to work at about three o'clock on the evening of January 7, 1909, having charge of defendant's engine room in its brewery in which the ammonia tank in question was located; that shortly before eight o'clock of that evening, while he was alone in this room, the tank exploded, causing ammonia fumes to escape into the room, and that he was fatally injured by inhaling such fumes.

It appears that the tank, which was about seven feet in length and fourteen and one-half inches in diameter, was made of steel of the thickness of one and one-half inches, and was connected by pipes with the remainder of the refrigerating system. It was equipped with an inlet valve, an outlet valve, and what is called a "pumping-out" valve. It had no safety valve, or other like appliance, to relieve the pressure in case the same should become dangerously great.

The evidence further discloses that the defendant had purchased and installed this tank in its said place of business in 1883, and that it had been in constant operation from that time up to the day of the injury, with the exception of a period of about five months. The last mentioned period was in the year preceding the accident, during which time it was in a shed, having been again put in operation about two weeks prior to its explosion. Though the tank had been tested when new, before being put into operation, it is undisputed that during the entire period of approximately twenty-six years after its purchase no test was ever made to determine the strain to which it might be safely subjected.

On behalf of plaintiff there was expert testimony going to show that the metal of which the tank was composed had become crystallized, and hence brittle and weak, from long continued use. This testimony went to show that, in an appliance of this character, the metal of which it is composed will, in course of

time, become crystallized, owing to the repeated contraction and expansion incident to its operation. The expert, so testifying, had examined the tank after the explosion, and stated that the nature of the break, and likewise the appearance of the metal, indicated that the material had become brittle through crystallization, whereby the tank had become weak and unsafe for ordinary use. This witness also testified to the methods employed for testing such an appliance.

It appears that the tank, when in use as a part of the refrigerating system, was ordinarily subjected to a pressure of something like one hundred and eighty pounds to the square inch. There was no evidence as to the pressure to which it was subjected at the time of its explosion. It appears that it had no guage upon it whereby to determine such pressure, though there was a guage elsewhere upon the ammonia system of which the tank formed a part when connected therewith.

On behalf of defendant there was expert testimony tending to contradict that for plaintiff and tending to show that the tank had not become materially weakened or injured through long use, by reason of the crystallization of the metal composing it or otherwise. And there was evidence in support of defendant's answer, to the effect that defendant's chief engineer had informed the deceased, at about five o'clock upon the evening in question, that this tank had been closed off from the remainder of the system, the inlet valve and the outlet valve being closed and the pumping-out valve opened, and that the witness told the deceased to leave it in that condition; that in this condition the tank was subjected to pressure of only ten or fifteen pounds to the square inch, and could not explode.

Appellant urges that its demurrer to the evidence should have been sustained. But we are not so persuaded. The charge of negligence to the effect that

the tank was old, worn, weak and defective, whereby it was rendered unsafe and dangerous, and that the exercise of ordinary care on defendant's part would have revealed the same, is, we think, amply sustained by the evidence. It was upon this assignment of negligence alone that plaintiff's case was sent to the jury, as appears from the instructions given. That the tank was not sufficiently strong to stand the pressure to which it was subjected at the time is, of course, beyond dispute. What may be the effect of the evidence adduced in an effort to show negligence on the part of the deceased will be touched upon later; but so far as concerns defendant's negligence we think that the evidence tends with much force to establish a failure on the part of the defendant to exercise ordinary care with respect to the appliance in question, and to show a breach of the duty which it owed its servant.

It is conceded that, though the tank had been in defendant's possession for a period of approximately twenty-six years, during nearly all of which time it was constantly in use, it had at no time been inspected in any manner so as to determine whether or not it was reasonably safe for the use to which it was being applied. It was designed to be and was subjected to enormous pressure in the course of its operation, and contained a deadly substance, to-wit, ammonia, the fumes of which caused the death of plaintiff's husband. It was a highly dangerous instrumentality, and one requiring inspection from time to time, at reasonable intervals, in order to determine its capacity to stand the strain to which it was subjected.

It is a trite doctrine that the duty resting upon the master to inspect, and to make such examinations and tests, at reasonable intervals, as may be reasonably necessary to ascertain the condition of the place where, or the instrumentality with which, the servant is required to work, is an affirmative and continuing duty. This question has been but lately discussed by

us in Pendegrass v. Railroad, 179 Mo. App. 517, 162 S. W. 712, and it is unnecessary for us to repeat what was there said. [See, also, Ogan v. Railroad, 142 Mo. App. l. c. 252, 126 S. W. 191; Denker v. Milling Co., 135 Mo. App. 340, 115 S. W. 1035; Scheurer v. Rubber Co., 227 Mo. l. c. 368, 126 S. W. 1037; Gutridge v. Railway Co., 105 Mo. 520, 16 S. W. 943.]

It appears that the exterior of the tank was kept painted, and it is said that the ammonia within the tank would preserve the interior thereof, and that hence the tank could not deteriorate either from within or without. But the expert testimony for plaintiff is to the effect that the weakening of the tank was caused by a gradual process of crystallization of the metal composing it, wholly independent of any corroding process upon the surface of the material. On the other hand the fact that the exterior of the tank was painted would of necessity prevent any inspection thereof, respecting its safety, by merely looking at it. And indeed merely looking under such circumstances would not be sufficient; but the master must use such reasonable tests as ordinary prudence would suggest, in order to ascertain the condition of such an appliance. [See Gutridge v. Railway Co., supra.]

The evidence adduced by plaintiff respecting the condition of the tank, the admitted failure of defendant to inspect it, together with the expert evidence for plaintiff tending to show that a proper test would have disclosed its unsafe condition, is sufficient to cast liability upon defendant, unless indeed defendant may be relieved therefrom upon the ground either of assumption of risk or of negligence on the part of deceased, as pleaded in defendant's answer.

We may pass over the alleged assumption of risk on Nowotny's part; for it is altogether clear that it was no part of his duty to make such tests as might be necessary to determine the safety of the appliance in question. And while he assumed the risk ordinarily

incident to the employment, after the performance of the duty which the law enjoins upon the master, he assumes no risk arising from the master's negligence. [See Crader v. Railroad, 181 Mo. App. 526, 164 S. W. 678, and cases cited.]

As to negligence on Nowotny's part, we think it sufficient to say that whatever appeared on this score was by no means conclusive, but merely raised a question for the jury. Plaintiff asserts that the testimony of defendant's chief engineer as to his statements to Nowotny on the evening in question, respecting the condition of the valves upon the tank, was much shaken by the testimony of this witness at the coroner's inquest, all of which came into the case without objection. But we shall not discuss this phase of the matter. It does not appear that Nowotny can be said to have been negligent as a matter of law, granting the truth of the evidence adduced by defendant on this score. Defendant's answer sets up that the engine room and machinery therein were under Nowotny's complete charge and control during the hours of his employment, and that it was his duty to exercise his own judgment with respect to the management thereof. And such is defendant's evidence. And if, during the course of the evening in question, it became, in Nowotny's judgment, necessary or proper to make any change in the valves of this tank, there is absolutely nothing to show that he had any cause to suspect that it was dangerous to do so. There is nothing whatsoever to suggest that the tank, under such circumstances, would be subjected to anything more than the pressure to which it was ordinarily subjected, and which Nowotny might assume would be safe. Quite to the contrary, it may be readily inferred that if Nowotny did in fact reconnect the tank with the remainder of the refrigerating system it would then be subjected to the pressure which prevailed over the entire system in use, the strain of which all

portions thereof were intended to stand. And though Nowotny was in charge of the engine room, others had access thereto, and it appears that others were in the room on this very evening, prior to the explosion. It by no means conclusively appears that Nowotny did any negligent act causing or contributing to cause his injuries, but on the contrary the evidence relating to his alleged negligence could do no more than raise an issue to be determined by the jury.

Other questions raised have been fully examined, but they are of not sufficient merit or importance to call for discussion. The cause was well tried below, and the amount of the verdict, to-wit $5500, is not challenged. The judgment should be affirmed; and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.